**FIGHT AGAINST COERCIVE TACTICS NETWORK, INC., et al., Plaintiffs,**

v.

**COREGIS INSURANCE COMPANY, Defendant.**

Civil Action No. 96–K–166.

United States District Court,
D. Colorado.

May 31, 1996.

Jeff Reiman, Reiman & Associates, P.C., Thomas Kelley, Natalie Hanlon–Leh, Faegre & Benson, Denver, CO, for Plaintiffs.

Geri O'Brien–Williams, Cairns, Dworkin & Chambers, P.C., Denver, CO, Jeffrey A. Goldwater, George J. Manos, Bollinger Ruberry & Garvey, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

On January 26, 1996, Fight Against Coercive Tactics Network, Inc. ("F.A.C.T.Net") and its directors, Lawrence Wollersheim, Robert Penny, and Arnaldo Lerma, filed a complaint against Coregis Insurance Company, asserting claims for (1) breach of contract, (2) bad faith or unreasonable breach of insurance contract, and (3) declaratory judgment. On February 26, 1996, Coregis filed an answer to the complaint and a counterclaim for declaratory judgment.

Jurisdiction exists under 28 U.S.C. § 1332 in that Plaintiff F.A.C.T.Net is a Colorado non-profit organization· with its principal place of business in Colorado, Wollersheim and Penny are residents of Colorado, Lerma is a resident of Virginia, and Defendant Coregis Insurance Company is an Indiana Corporation with its principal place of business in Illinois and the amount in controversy exceeds $50,000.00, exclusive of interests and costs.

On March 22, 1996, I ordered the claims for declaratory judgment severed and discovery and summary judgment matters bifurcated. I set an accelerated briefing schedule for the cross-motions for summary judgment and stayed discovery pending ruling on the cross-motions.

I stated oral argument would be held on May 10, 1996 but only if counsel were noti-

fied of the hearing, otherwise I would rule on the briefs. After examining the briefs, I conclude oral argument would not materially assist in the determination of the cross-motions for summary judgment.

I deny the motion of Coregis for summary judgment and grant that of Plaintiffs insofar as it seeks declaratory judgment that Coregis has a duty to pay for the Insureds' defense costs as they are incurred. I further award to Plaintiffs the costs incurred in the briefing on the cross-motions for summary judgment.

## I. *The Underlying Litigation.*

On August 11, 1995, a copyright infringement and misappropriation of trade secrets suit was filed in the United States District court for the Eastern District of Virginia, Alexandria Division, *Religious Technology Center v. Arnaldo Pagliarina Lerma and Digital Gateway Systems,* 908 F.Supp. 1353 (the "Virginia Action"). The most recent complaint filed in that action is the second amended complaint for injunctive relief and damages for copyright infringement and trade secrets misappropriation.

On August 21, 1995, a copyright infringement and misappropriation of trade secrets suit was filed in this court, *Religious Technology Center and Bridge Publications, Inc. v. F.A.C.T.NET, Wollershein, and Penny,* 901 F.Supp. 1528 (the "Colorado Action"). Similarly, in that action, the second amended complaint is for injunctive relief and damages for copyright infringement and trade secrets misappropriation.

## II. *The Insurance Policy.*

Coregis issued to F.A.C.T.Net, as the named insured, a Non–Profit Organization Liability Insurance Policy, having a policy period from May 13, 1995 to May 13, 1996, policy number 524–435493–6, with limits of liability of $1 million for each loss and in the aggregate for each policy year and a $2,500 retention for each loss ("Policy"). (Compl., Ex. A.) Each of the Plaintiffs claims to be an "Insured" under the terms of the Policy and to have given Coregis timely notice of the suits.

The Policy's insuring agreement, as modified by Endorsement 1V, provides:

### I. Coverages A and B

A. The Company will pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims made against them because of a Wrongful Act, provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period, within sixty (60) days thereafter, or during the discovery period.

B. The Company will reimburse the Entity for all Loss for which the Entity shall be required by law to indemnify individual Insureds for any civil claim or claims first made against them because of a Wrongful Act, provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period, within sixty (60) days thereafter, or during the discovery period.

(Policy at 1 of 6 and Endorsement 1V.)

The Policy contains the following relevant definitions:

A. "Insureds" shall mean the Entity and any individual who was, now is, or shall be a director, officer, trustee, employee, volunteer or staff member of the Entity and shall include any executive, board member and committee member whether salaried or not.

. . . .

D. The term "Wrongful Act" shall mean any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by one or more of the individual Insureds while acting in their capacity as an authorized representative of the Entity, subject to the further terms, conditions and limitations of this policy.

E. "Loss" shall mean any amount which the Insureds are legally obligated to pay or which the Entity shall be required, or permitted by law to pay as indemnity to the Insureds, for any claim or claims made against them, for

Wrongful Acts and shall include but not be limited to damages, judgments, settlements and costs, cost of investigation and defense of legal actions (excluding from such cost the salaries of officials or employees of the Entity), claims or proceedings and appeals therefrom, cost of attachment or similar bonds; provided always, however, such subject of Loss shall not include fines imposed by law, or matter which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(Policy at 1 of 6.)

Within the Conditions section, the Policy contains the following pertinent provisions regarding the defense and settlement of actions against Insureds:

### IX. Defense and Settlement

In the event of a claim, the Insureds shall take reasonable measures to protect their interests. If defense of a suit shall be required then the Insured shall appoint counsel.

No costs or expenses shall be incurred on behalf of the company under any circumstances without its consent, which consent, once given, may be withdrawn at any time but may not be unreasonably withheld. In the event the Insured and the Company cannot agree on the allocation or apportionment of counsel's fees and expenses, then under such circumstances the Insured's right of indemnity for such expenses and fees shall not mature until the claim giving rise thereto has been finally and completely adjudicated and/or settled.

. . . .

(Policy at 3 of 6.)

Further, under the Conditions section, the Policy contains the following "no action" clause:

### X. Action Against the Company

No action shall lie against the Company unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, and until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Company.

(*Id.* at 4 of 6.)

The Policy contains no express language requiring Coregis to defend Insureds in any lawsuit filed against them.

### III. *Issues on Summary Judgment.*

Coregis seeks summary judgment on the following grounds: (1) Coregis has no duty to defend Plaintiffs in the Virginia and Colorado actions; (2) Coregis has no duty of interim funding of Plaintiffs' Defense in the Virginia and Colorado actions; (3) the instant case should be dismissed for lack of case or controversy.

Plaintiffs seek summary judgment, asserting: (1) Coregis has a duty to pay for the Insureds' defense costs as they are incurred; (2) none of the contract clauses clearly negates the obligation to pay defense costs as incurred, but at most creates an ambiguity; (3) Plaintiffs are entitled to the cost of the legal fees they expended in bringing the present action to recover benefits under the policy.

### IV. *Applicable Law.*

"Summary judgment is appropriate if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Hagelin for President Committee v. Graves*, 25 F.3d 956, 959 (10th Cir.1994) (quoting Rule 56(c), *cert. denied*, —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995)).

Because jurisdiction exists based upon the diversity of citizenship of the parties, the choice of law rules of the forum state apply. *Broderick Inv. Co. v. Hartford Acc. & Indem. Co.*, 954 F.2d 601, 606 (10th Cir.), *cert. denied*, 506 U.S. 865, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992). In contract dispute cases, Colorado has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. *Webb v. Dessert Seed Co., Inc.*, 718 P.2d 1057, 1066 (Colo.1986). It is undisputed that, applying this test, Colorado courts

would apply Colorado's substantive law to this action.

■ An insurance policy is a written contract and, as such its construction is to be determined as a matter of law. *United States Fidelity & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 211 (Colo. 1992). Insurance policies must be enforced as written, unless there is an ambiguity in the policy language. *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994).

■ Policy language is ambiguous where it is reasonably susceptible to more than one meaning. *Id.; Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo.1993); *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1091 (Colo.1991). If this is the case, the policy must be construed against the drafter and in favor of providing coverage to the insured, i.e. the court must accept and apply the reasonable interpretation offered by the insured. *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990).

■ When construing an insurance policy, strained constructions should be avoided. *Allstate Ins. Co. v. Willison*, 885 P.2d 342, 344 (Colo.App.1994). If a limitation or an exclusion in the policy is unambiguous, that limitation or exclusion must be enforced. *Lopez v. Dairyland Ins. Co.*, 890 P.2d 192, 194 (Colo.App.1994).

■ "When construing the language of an insurance contract, its provisions cannot be read in isolation, but must be considered as a whole. When provisions of an insurance policy conflict, they are to be construed against the insurer and in favor of coverage to the insured." *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239–40 (Colo.1992) (citations omitted).

## V. *Duty to Defend and Reimbursement for Defense Costs as Incurred.*

### A. *Parties' Arguments.*

Coregis argues it has no duty to defend Plaintiffs in the Virginia and Colorado actions because the Policy is an indemnity-type policy which neither contains express "duty to defend" language, nor otherwise obligates

Coregis to defend any claims against them. It asserts the Policy simply provides for the reimbursement of the costs for the insured's own defense, and then only defending against covered claims.

Coregis relies on the following Policy provisions: "In the event of a claim, the Insureds shall take reasonable measures to protect their interests. If defense of a suit shall be required the Insured shall appoint counsel." (Policy ¶ IX at 3 of 6.) Coregis maintains this language demonstrates clearly and unambiguously that it has no duty to defend and that the parties intended the duty to conduct Plaintiffs' defense to fall upon Plaintiffs, rather than Coregis, and must be interpreted and enforced as written.

Coregis cites *Board of Trustees of Mich. State Univ. v. Continental Cas. Co.*, 730 F.Supp. 1408, 1414 (W.D.Mich.1990) and *Zaborac v. American Cas. Co.*, 663 F.Supp. 330, 333 (C.D.Ill.1987), asserting that the language in the Policy is virtually identical to that in the policies in those cases. It maintains they support its contention that this is an "indemnity," rather than a "duty to defend" type policy, that it has no duty to defend and, moreover, has no duty of interim funding of Plaintiffs' defense in the two actions.

In support of its contention that there is no duty of interim funding of the defense, Coregis relies on the Policy language that no costs or expenses shall be incurred on behalf of the company without its consent and that "[i]n the event the Insured and the Company cannot agree on the allocation or apportionment of counsel's fees and expenses, then under such circumstances the Insured's right of indemnity for such expenses and fees shall not mature until the claim giving rise thereto has been finally and completely adjudicated and/or settled." (Policy ¶ IX at 3 of 6.)

Coregis maintains it has not agreed with Plaintiffs to an allocation of the defense costs for defending covered claims and there has not been complete adjudication of the Virginia or Colorado actions nor settlement reached in either case. Therefore, it asserts, the claim of Plaintiffs for expenses and fees has not matured.

Plaintiffs assert the fact that the Policy contains no express language requiring Coregis to defend the Insureds in any lawsuits filed against them means only that Coregis is not required to appoint legal counsel or participate in the control or strategy of litigation. *See Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir.1989). They maintain Coregis has the duty to pay the costs of its Insureds' defense as those costs are incurred by the Insureds because "[t]he duty to provide reimbursement for costs as they are incurred is separate from a duty to defend." *FDIC v. Booth*, 824 F.Supp. 76, 80 (M.D.La. 1993); *see also National Union Fire Ins. Co. v. Brown*, 787 F.Supp. 1424, 1430 (S.D.Fla. 1991), *aff'd*, 963 F.2d 385 (11th Cir.1992).

According to Plaintiffs, the clear and plain language of the Policy reflects Coregis' duty to pay the Insureds' defense costs as they are incurred. They rely on the Coverage A provision, stating that Coregis "will pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay" and the definition of "Loss" as "any amount which the Insureds are legally obligated to pay." (Policy at 1 of 6.)

Plaintiffs state the aforesaid language requires Coregis to pay to third parties on behalf of the Insureds the costs of the Insureds' defense when those costs become the legal obligation of the Insureds (i.e. when they are billed by their attorneys). They rely on *Mt. Hawley Ins. Co. v. FSLIC*, holding that "[t]he plain meaning of 'pay on behalf of' is to disburse to a third party money owed by the insured. The policy could have promised only to indemnify the insureds against loss, but it does not. The insuring clause, setting forth the fundamental obligation of the policy, establishes this as a liability policy." 695 F.Supp. 469, 475 (C.D.Cal.1987).

Plaintiffs dispute Coregis' characterization of the Policy as an "indemnity-type" or "reimbursement" policy. They state under an "indemnity-type" policy, the insurer agrees to repay or reimburse the insured for actual outlays by the insured, whereas a traditional "liability" policy requires the insurer to pay to third parties those sums which the insured is legally obligated to pay, as soon as such legal obligation arises. *See* 11 George J. Couch, *Couch Cyclopedia of Insurance Law* § 44:4 at 187–88 (2d ed. 1982).

Plaintiffs assert, if the Policy is a "liability" policy as its title declares it to be, Coregis is required to pay to third parties the Plaintiffs' defense costs as soon as Plaintiffs are legally obligated to pay them, rather than to repay or reimburse them only after they have paid those costs. They cite numerous cases in support of their assertion in which courts construed similar language as requiring the insurer to pay the insured's defense costs as they are incurred. *See, e.g., Gon*, 871 F.2d at 868 (holding that an insurer "must pay legal expenses as they are incurred, because an insured becomes legally obligated to pay legal expenses as soon as the services are rendered"); *FSLIC v. Burdette*, 718 F.Supp. 649, 661 (E.D.Tenn.1989) ("the language 'shall become legally obligated to pay' clearly indicates a duty on the insurer to pay expenses and costs when they are incurred and fees when they are billed, for in such instances the [insureds] have become legally obligated to pay them").

Plaintiffs distinguish *Zaborac*, relied on by Coregis, because that policy contained an "option to advance" clause which the Policy here does not share. Plaintiffs assert the "option to advance" clause made it clear that the insurer also had the option not to advance such costs and was central to the holding in *Zaborac*. They further assert *Zaborac* is in the distinct minority construing policy language similar to that in the Coregis Policy. Plaintiffs admit the parties have not agreed to an allocation of the defense costs for defending covered claims but maintain Coregis has persistently denied coverage under the Policy.

In reply, Coregis acknowledges that under Coverage A of the Policy, and under the definition of "Loss," Coregis is required to pay "on behalf of the Insureds" their "defense costs." Nevertheless, it asserts under the Defense and Settlement provisions (Policy ¶ IX at 3 of 6), such payments will be made on an interim basis only where the parties agree to allocate such costs between covered and non-covered claims. Without an allocation agreement, Coregis asserts, the

Policy provides defense costs will not be paid until the Insureds' liability is finally determined. Coregis states it has requested Plaintiffs' suggestion as to an interim funding agreement but has received no response.

Coregis maintains the cases relied on by Plaintiffs requiring interim funding are distinguishable in that they analyze policies with combinations of clauses different from those in the subject Policy. It iterates the provisions in the Policy are most similar to those in *Zaborac* in that both contain a "no action" clause.

Coregis also equates the Policy language that, in the event the Insured and the Company cannot agree on allocation or apportionment of fees, then "the Insured's right of indemnity for such expenses and fees shall not mature until the claim giving rise thereto has been finally and completely adjudicated," with the "option to advance clause" in the *Zaborac* policy. The latter gave the insurer the option, upon request, to advance on behalf of the insureds expenses incurred in connection with claims made against them before the disposition of such claims.

### B. *Analysis.*

■ Since Plaintiffs acknowledge there is no express "duty to defend" clause in the Policy, the first issue is whether Coregis has a duty to provide reimbursement for defense costs as they are incurred, a duty separate from the duty to defend. *See Gon v. First State Ins. Co.,* 871 F.2d at 868; *FDIC v. Booth,* 824 F.Supp. at 80; *National Union Fire Ins. of Pittsburgh, Pa. v. Brown,* 787 F.Supp. at 1430.

The issue of whether a duty of "interim funding" exists under a policy such as this is one of first impression in Colorado. Courts

in other jurisdictions which have reviewed policies with similar language to that in this case have reached different results on the question of whether the insurer has a duty to advance legal fees before final disposition of the action. Most have required the insurer to pay the insured's defense costs as incurred.[1] Some, however, have found no such contemporaneous duty.[2]

I find the reasoning in the *Zaborac* case, chiefly relied on by Coregis, to be unpersuasive in that it was premised on the court's determination that the policy there construed was an indemnity policy. The "insuring clause" in the *Zaborac* policy was similar to that in the Coregis Policy, stating that "the insurer agrees to pay: all Loss which the Directors and Officers ... shall become legally obligated to pay." *Zaborac* 663 F.Supp. 330 at 332. The policy defined loss as "any amount which the Directors and Officers ... are legally obligated to pay ... and shall include ... defense of legal actions...." *Id.*

The classification of the policy in *Zaborac* as an indemnity policy, rather than a liability policy, contradicts well-established definitions of the distinction between the two, which has been described as follows:

Under a liability policy the insurer is required to make payment although the insured has not yet suffered any loss, for by definition the purpose of the liability policy is to shield the insured from being required to make any payment on the claim for which he is liable.

Under an indemnity contract, by way of contrast, the insurer is only required to indemnify or make whole the insured after he has sustained actual loss, meaning after the insured has paid or been compelled to

1. *See, e.g., Gon v. First State Ins. Co.,* 871 F.2d 863, 868 (9th Cir.1989); *Little v. MGIC Indem. Corp.,* 836 F.2d 789, 793 (3d Cir.1987); *Okada v. MGIC Indem. Corp.,* 823 F.2d 276, 280 (9th Cir. 1986); *FDIC v. Booth,* 824 F.Supp. 76, 80–81 (M.D.La.1993); *National Union Fire Ins., Pa. v. Brown,* 787 F.Supp. 1424, 1430 (S.D.Fla.1991); *FSLIC v. Burdette,* 718 F.Supp. 649, 661 (E.D.Tenn.1989); *Mt. Hawley Ins. Co. v. FSLIC,* 695 F.Supp. 469, 476 (C.D.Cal.1987); *American Casualty Co. v. Bank of Montana System,* 675 F.Supp. 538, 543 (D.Minn.1987); *PepsiCo, Inc. v.*

*Continental Cas. Co.,* 640 F.Supp. 656, 659 (S.D.N.Y.1986).

2. *See, e.g., Kenai Corp. v. National Union Fire Ins. Co. (In re Kenai Corp.),* 136 B.R. 59, 63 (S.D.N.Y.1992); *Zaborac v. American Cas. Co.,* 663 F.Supp. 330, 333 (C.D.Ill.1987); *American Cas. Co. v. FDIC,* 677 F.Supp. 600, 606 (N.D.Iowa 1987); *Luther v. Fidelity & Deposit Co.,* 679 F.Supp. 1092, 1093 (S.D.Fla.1986), *Enzweiler v. Fidelity & Deposit Co.,* 1986 WL 20444 at *2 (E.D.Ky. May 13, 1986).

make a payment, his action against the insurer then being to recover the amount of such loss by way of indemnity. *Thus in substance the distinction between an indemnity and a liability policy is that payment by the insured is necessary under the indemnity but not under the liability contract.*

11 George J. Couch, *Couch Cyclopedia of Insurance Law* (2d ed. 1982) at 187–88 (footnote omitted) (emphasis added).[3]

The *Zaborac* court concluded the policy was one of indemnity despite the fact that the plain language required the insurance company to pay for losses incurred, not after the insured had made payment, but after the insured had become legally obligated to pay such losses. *Zaborac*, 663 F.Supp. at 332.

As other courts have stated, a policy "based on loss as incurred and not as loss paid out by insureds, is a liability policy." *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276, 280 (9th Cir.1986); *see also Mt. Hawley Ins. Co. v. FSLIC*, 695 F.Supp. 469, 475 (C.D.Cal.1987) (holding "[t]he plain meaning of 'pay on behalf of' is to disburse to a third party money owed by the insured").

One must look to the terms of the Policy in order to determine Coregis' duties thereunder. Any ambiguity must be resolved in favor of the Insureds. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo.1992). A reasonable interpretation of the "Loss" clause is that Coregis has an obligation to pay expenses and costs when they are incurred and fees when they are billed, for in such instances, the Insureds have become legally obligated to pay them.

Coregis argues the Policy does not require the funding of defense costs as incurred in light of the "no action" clause, (Policy ¶ X at 4 of 6), and the clause relating to "allocation or apportionment of expenses," (Policy ¶ IX at 3–4 of 6). It relies on the holding in *Zaborac* that a "no action" clause proscribes an action against the insurance company until the insured's obligation to pay is deter-

mined by trial or settlement, and therefore precludes an obligation to provide interim defense funding. *See Zaborac*, 663 F.Supp. at 333. That decision is unpersuasive in this regard because, as discussed, it was incorrectly premised on the assumption that the policy was one of indemnity.

Further, the allocation clause does not clearly modify the duty of contemporaneous payment imposed by Coverage A when read with the definition of "Loss" in the Policy. Rather than explicitly negating Coregis' duty as to costs of defense, the clause modifies one affirmative representation of when Coregis will pay (the "legally obligated" language of Coverage A) with another affirmative representation of when Coregis will pay (the allocation and apportionment clause of ¶ IX).

If Coregis had intended to carve out an exception to its duty to pay for losses, including defense costs which the Insureds are legally obligated to pay, it could have used alternative language putting the matter beyond reasonable question. Instead, the Policy contains seemingly conflicting provisions which are to be construed against the insurer and if favor of the insured. *See Simon*, 842 P.2d at 239.

That different courts have arrived at conflicting interpretations of similar clauses in other policies is indicative of the Policy's ambiguity. *See Little v. MGIC Indemnity Corp.*, 836 F.2d 789, 796 (3d Cir.1987); *see also Cohen v. Erie Indem. Co.*, 288 Pa.Super. 445, 432 A.2d 596, 599 (1981) (holding "[t]he mere fact that several ... courts have ruled in favor of a construction denying coverage, and several others have reached directly contrary conclusions, viewing almost identical policy provisions, itself creates the inescapable conclusion that the provision in issue is susceptible to more than one interpretation.")

Moreover, by name and by well recognized definition, the Policy is one of liability, rather than indemnity. The significance of this distinction is that under a liability policy, whenever a covered loss occurs (the insured be-

---

**3.** *See also* Appleman & Appleman, *Insurance Law and Practice* (1979) § 4261 (The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under

the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured. That is, under an indemnity policy the insured must have suffered an actual money loss before the insurer is liable).

comes "legally obligated" to pay), the insurer must pay that amount. Here, Coregis' duty is not conditioned upon a previous payment by the Insureds as in an indemnity policy.

There is a further ambiguity in the Policy where it states that if agreement cannot be reached "on the allocation and apportionment of counsel's fees and expenses, then under such circumstances the Insured's right of indemnity for such expenses and fees shall not mature" until the claim giving rise thereto has been finalized. (Policy ¶ IX at 3 of 6.) As discussed, the Insureds do not have a right of indemnity, in its accepted meaning, for defense costs under the Policy. Rather, the Policy obliges Coregis to "pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay." (Policy Coverage A at 1 of 6), rights true to the name of the Policy, i.e. one of liability insurance. Again, the language in ¶ IX, if intended to chisel an exception to the obligation to pay defense costs as incurred, is ambiguous.

Nor do I find convincing Coregis' equation of the language of the "allocation or apportionment of expenses" clause with that of the "option to advance clause" contained in the *Zaborac* policy. The "option clause," unlike the "allocation clause," contains an implication that the insurer has the option, at its sole discretion, not to advance defense costs as incurred. In any event, where either type of clause is ambiguous and does not clearly negate the obligation to pay defense costs as incurred, the contract must be construed against the insurer and in favor of coverage. *See McCuen v. American Casualty Co.*, 946 F.2d 1401, 1406–07 (8th Cir.1991) (holding an "option to advance" clause was ambiguous and thus did not abrogate the duty to pay defense costs as the insureds incurred them).

"Where ... the attempted disclaimer is unclear, the insureds reasonably could have believed that contemporaneous payment for legal defense was assured." *Okada*, 823 F.2d at 281. Even accepting Coregis' interpretation as reasonable, the policy language is ambiguous in that it is susceptible to more than one reasonable interpretation. *See Ballow v. PHICO Ins. Inc.*, 875 P.2d 1354, 1359 (Colo.1993). Under Colorado law, where policy language is ambiguous, the court must

accept and apply the reasonable interpretation offered by the insured. *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990).

For the reasons stated above, I conclude the Policy language fails clearly to modify the general duty of contemporaneous payment of defense legal expenses imposed by Coverage A when read with the definition of "Loss." I construe the ambiguity against the insurer and find the Policy creates a legal obligation on Coregis to pay defense legal expenses when they are incurred and fees when they are billed.

## VI. *Lack of Case or Controversy.*

Coregis maintains, the Policy being one of indemnity, it has no duty to defend the Insureds or provide interim funding for their defense, and will, therefore, incur no obligation to the Insureds until there has been adjudication or settlement of the underlying actions, demonstrating that one or more claims are covered under the policy. On this basis, Coregis argues, the case should be dismissed for lack of a case or controversy. Because I conclude the Policy imposes a legal obligation on Coregis to provide interim funding for the Insureds' defense costs, I reject this argument.

Coregis claims further that the "no action" clause of the Policy prohibits an Insured from suing the insurer until there is a final resolution of the underlying claims for which it seeks coverage and, therefore, because the claims against Plaintiffs are neither finally determined nor settled, they have no cause of action at this time. In support of this position, Coregis relies on *Zaborac*, where the court held there existed "no present controversy to be adjudicated" based on its conclusion that the insurer had the right but not the duty under the "option to advance" clause to advance defense costs. *Id.* at 334.

As discussed, the Policy here contains no such clause. Plaintiffs contend Coregis has a duty to pay on its behalf defense costs that they are presently legally obligated to pay. Coregis challenges this interpretation of the contract, thus creating a present controversy ripe for adjudication.

Coregis' reliance on *Kesinger v. Commercial Standard Ins. Co.*, 101 Colo. 109, 70 P.2d 776 (1937) is also misplaced. There, the policy required that suit be brought by the insured only after judgment or settlement consented to by the insurer. The court held the plaintiff, claiming to be an insured under a policy, could not sue for indemnity on a settlement he made voluntarily without giving his insurer itself the opportunity to defend or settle the claim. The attempted extrapolation from this decision, that under Colorado law, a "no action" clause applies to an insured in the circumstances of this case lacks foundation.

To the contrary, several courts have held a "no action clause" does not apply to a suit an insured brings asserting the insurer is withholding benefits due under the policy, but rather to claims by a third party alleging the insured is responsible for the third party's injuries or claims. *See, e.g., Paul Holt Drilling, Inc. v. Liberty Mut. Ins. Co.*, 664 F.2d 252, 254 (10th Cir.1981); *see also* Allan D. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies and Insured*, § 8.06 n. 41 (1995) (citing cases holding that such clause does not bar an insured's declaratory judgment action instituted before the underlying claim is resolved alleging insurer's breach of contract). I agree with this view.

I find the case is ripe for declaratory judgment review and that the "no action" clause of the Policy does not bar Plaintiffs request for declaratory judgment.

### VII. *Allocation of Costs.*

I next consider Coregis' assertion that allocation of costs is necessary at this time because on both causes of action in the underlying actions, the plaintiffs have made assertions which render the claims potentially uncovered based on the Policy exclusions. Plaintiffs maintain the only reasonable interpretation of the allocation clause is that it gives Coregis the right to defer adjustment with respect to defense costs which it can in good faith claim are not reasonably related to the defense of a potentially covered claim.

The claims in both underlying suits involve two legal theories, namely trade secrets misappropriation and copyright infringement. Plaintiffs argue there is no basis for apportionment because there is a possibility of an adjudication that would bring all of the claims for relief alleged within coverage. Coregis states allocation of fees is mandated here because of the application of several policy exclusions.

■ I agree with the approach that where the policy creates an obligation on the insurer to pay for defense costs as incurred, apart from those claims contained in the pleadings which are clearly excluded from coverage, e.g. for libel or slander, apportionment in advance of judgment is impractical. *See Gon v. First State Ins. Co.*, 871 F.2d 863, 868–69 (9th Cir.1989); *Okada v. MGIC Indem. Co.*, 823 F.2d 276, 282 (9th Cir.1986). When the nature of the claims in the complaint does not clearly indicate that they would be covered or uncovered, early apportionment would make a third party complainant "arbiter of the policy's coverage," *Gon*, 871 F.2d at 869, and, "because the facts are not fully developed, may deny the insureds the benefits of the protection they purchased," *id.*

None of the exclusions relied on by Coregis clearly eliminates its liability for loss in connection with either the trade secrets or copyright claims in the underlying actions. Even if those claims contain aspects which might be excluded from coverage, apportionment in advance in respect of costs expended on defending such aspects "would be very difficult, if not impossible." *See id.* at 868. Accordingly, I do not find apportionment at this time feasible.

However, as was the court in *Gon*, so am I mindful of the predicament of the insurer. *See id.* at 869. Coregis may be advancing legal fees which it may have difficulty recovering. For example, either court in the underlying actions might later decide an Insured willfully violated either the Copyright Act or the relevant trade secrets statute on which the complaint is based, a loss excluded from coverage by Exclusion 7 in the Policy.[4]

---

4. Exclusion 7 exempts from coverage any Loss in

connection with any claim made against the In-

In that event, Coregis would not ultimately be liable for the legal fees incurred in defending that claim. Further, before the election by plaintiffs in each of the underlying actions of statutory damages in lieu of actual damages or profits on the copyright claim, the Insureds may have incurred costs in defending such claim insofar as it was based on the alleged gain of personal profit to which the Insureds were not legally entitled. Such defense costs may be excluded under Exclusion 1.[5] Also, inasmuch as the underlying claims seek injunctive relief, rather than money damages, costs incurred in defending against that aspect of the claims may not be covered under Exclusion 4a.[6]

To overcome these potential problems, adopting the suggestion in *Gon,* I shall appoint a special master to monitor the defense legal expenses so as to keep track of those which are attributable to covered and uncovered matters and to permit early apportionment if it should emerge that some portions of the incurred expenses prove to be uncovered and easily severable, without prejudice to the defense of the covered aspects of the claims. *See Gon,* 871 F.2d at 869.

### VIII. *Attorney Fees.*

 Plaintiffs seek an order that they are entitled to the cost of the legal fees they expended in bringing the present action to recover benefits under the policy. They cite *Bernhard v. Farmers Ins. Exchange,* 885 P.2d 265, 271 (Colo.App.1994), *aff'd,* 915 P.2d 1285 1996 WL 189803 (Colo.1996), which held an insured may recover the costs of bringing a successful claim for denial of policy benefits, including both the fees incurred in defending against the claim and those arising from pursuing the claim against the carrier for reimbursement of such litigation expenses. Plaintiffs maintain the same reasoning applies to this suit for denial of a duty to pay defense costs as they arise and request an order awarding them their reasonable attorney fees incurred in prosecuting this action.

Coregis responds in a footnote that the issues of the cross-motions for summary judgment are whether Coregis has a duty to defend/interim fund the defense of the underlying actions. It asserts the issue of whether Plaintiffs are entitled to their attorney fees is premature because Plaintiffs might only be able to recoup their fees if they are successful in this action. Coregis states it therefore does not address the issue but requests permission to present a separate brief on the issue if I believe it is ripe.

Plaintiffs reply that the issue is ripe and briefed. They assert Coregis had an opportunity to respond and does not have the prerogative to remain silent and seek leave to address the issue later.

This case is not at an end, only the declaratory relief aspect of the action has been addressed. Nevertheless, Plaintiffs have become legally obligated to pay the legal fees incurred in bringing this action on account of the refusal of Coregis to pay contemporaneously for their legal expenses in defending the underlying actions. I have determined Coregis has such duty of interim funding of the defense of the underlying actions. It is therefore appropriate, I believe, to award the fees incurred in bringing the action for declaratory relief, or at least, those incurred in the briefing of the cross-motions for summary judgment. Without such award, the Insureds would not receive the benefits to which they are entitled under the Policy.

I see no merit in Coregis' position that the matter of attorney fees involved in resolving the issues before me is not ripe for decision. Its election not to brief the issue in its combined response created a self-imposed risk.

I award Plaintiffs the attorney fees incurred in briefing the cross-motions for summary judgment.

---

sureds based on the "willful violation of a statute ... committed by or with the knowledge or consent of an Insured." (Policy IV Exclusions ¶ 7 at 2 of 6.)

**5.** Exclusion 1 exempts liability for Loss in connection with any claim made against the Insureds based upon ["[a]n Insured gaining any personal profit or advantage to which they [sic] were not legally entitled." (Policy IV Exclusions ¶ 1 at 2 of 6.)

**6.** Exclusion 4a exempts from coverage Loss in connection with any claim "seeking relief, or redress, in any form other than money damages." (Policy IV Exclusions ¶ 4.a. at 2 of 6.)

### IX. *Conclusion.*

I conclude the Policy creates a legal obligation on Coregis to pay defense legal expenses and costs when they are incurred and legal fees when they are billed. I further conclude apportionment between covered and uncovered claims is not yet feasible based on the nature of the claims and allegations in the underlying cases. Coregis must therefore pay all legal expenses as incurred, subject to apportionment and reimbursement for defense of uncovered claims after settlement or judgment in the underlying actions.

I shall appoint a special master to take all necessary action to monitor the defense legal expenses attributable to covered and uncovered matters, and if it is ascertained that some portions of the incurred expenses are uncovered and easily severable, without prejudice to the defense of the covered aspects of the claims, to advise me accordingly, so as to permit consideration of an earlier apportionment.

I deny the motion of Coregis for summary judgment. I grant Plaintiffs' motion insofar as it seeks declaratory judgment that Coregis has a duty to pay for legal expenses and costs when they are incurred and legal fees when they are billed relating to the defense of the Colorado and Virginia actions, subject to apportionment and reimbursement for defense of uncovered claims after settlement or judgment in those underlying actions.

Further, I award to Plaintiffs the attorney fees incurred in the briefing on the cross-motions for summary judgment, the precise amount of which shall be determined by the magistrate judge whom I have appointed in this case. Accordingly,

IT IS ORDERED THAT Defendant/Counter–Plaintiff Coregis Insurance Company's Motion for Summary Judgment is DENIED;

IT IS FURTHER ORDERED THAT Plaintiffs/Counter–Defendants' Motion for Summary Judgment is GRANTED insofar as it seeks declaratory judgment that Coregis has a duty to pay for all legal expenses and costs when they are incurred and legal fees when they are billed relating to the defense of the Colorado and Virginia actions, subject to apportionment and reimbursement for the defense of uncovered claims after settlement or judgment in those underlying actions;

IT IS FURTHER ORDERED THAT Defendant/Counter–Plaintiff shall pay to Plaintiffs/Counter–Defendants their attorney fees incurred in the briefing of the cross-motions for summary judgment, the precise amount of which shall be determined by the magistrate judge whom I have appointed in this case.