**CINERGY CORPORATION, PSI Energy Incorporated, and Cincinnati Gas & Electric Company, Appellants–Defendants,**

v.

**ST. PAUL SURPLUS LINES INSURANCE COMPANY, et al., Appellees–Plaintiffs.**

**No. 32A05–0409–CV–474.**

Court of Appeals of Indiana.

Dec. 13, 2005.

George M. Plews, John M. Ketcham, Plews Shadley Racher & Braun, Indianapolis, for Appellants.

Richard A. Smikle, Brian J. Paul, Ice Miller, Indianapolis, Howard B. Epstein, Theodore A. Keyes, Sami B. Groff, Schulte Roth & Zabel, LLP, New York, NY, for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, Cinergy Corporation, PSI Energy, Inc., and the Cincinnati Gas & Electric Company (collectively,

Cinergy) appeal the trial court's Order denying its Motion for Partial Summary Judgment against Appellees–Plaintiffs, St. Paul Surplus Lines Insurance Co., *et al.* (AEGIS).

We affirm.[1]

### *ISSUE* [2]

Cinergy raises two issues on appeal, which we consolidate and restate as the following issue: Whether a policyholder of a first-layer liability insurance policy is entitled to payment of defense costs as they are incurred when the insurance policy does not contain a duty to defend clause or express language authorizing a delay in payment of those costs until determination of whether the underlying claims are covered.

### *FACTS AND PROCEDURAL HISTORY*

Prior to 1994, PSI Energy, Inc., an Indiana corporation owning and operating four Indiana power plants, and the Cincinnati Gas & Electric Company, an Ohio corporation, owning and operating two Ohio power plants, were separate companies, covered by separate insurance programs. Effective October 24, 1994, both companies became subsidiaries of Cinergy Corporation, a public utility holding company. Since the acquisition, all power plants are covered under an excess insurance policy issued by AEGIS.

On November 3, 1999, the United States, together with several States and environmental organizations, filed its Complaint against Cinergy seeking injunctive relief and civil penalties for Cinergy's alleged violations of the Clean Air Act (the Underlying Lawsuit). The Underlying Lawsuit purports to establish that after completing certain maintenance and repair projects at six Cinergy plants, Cinergy resumed operations without installing additional air emissions control equipment, and thereby caused increased emissions of various harmful substances. As a result of these excess emissions, the United States claims bodily injury, property damage, and personal injury. Based on these alleged violations of the Clean Air Act, the plaintiffs in the Underlying Lawsuit seek a judgment requiring Cinergy to remedy, mitigate, or offset the harm to public health and the environment. As of September of 2003, Cinergy had incurred over six million dollars in defending against the Underlying Lawsuit.

AEGIS is Cinergy's principal first-layer insurer of its operations. A first-layer insurance policy provides the first coverage to the policyholder after exhaustion of the deductible, or self-insured retention (SIR).[3] By letter dated July 20, 2000,

---

1. Oral arguments were held on September 19, 2005 in the Court of Appeals courtroom. We congratulate counsel on their excellent arguments.

2. Prior to turning to the merits of the issue before us, we grant the following motions: AEGIS' Notice of Additional Authority pursuant to Rule 48, filed on September 15, 2005; Cinergy's Submission of Supplemental Authority, filed September 15, 2005; and Cinergy's Second Notice of Additional Authority, filed September 16, 2005. We hereby deny AEGIS' Motion to file Amendment to the Supplemental Addendum, filed September 16, 2005.

3. For example, for PSI Energy, Inc.'s policy effective October 31, 1984 to October 31, 1985, PSI Energy, Inc.'s SIR is $500,000. The first-layer of PSI's insurance coverage is AEGIS' policy, insuring the company from $500,000 to $25,000,000. The second layer of coverage is provided by Integrity Insurance Company and Safety Mutual Insurance Company, which equally share the $25,000,000 to $35,000,000 layer. The third layer is provided by California Union Insurance Company, from $35,000,000 to $45,000,000.

Cinergy attempted to recover its defense costs in the Underlying Lawsuit from AE-GIS under three first-layer policies: (1) policy no. 004 ANJ issued to the Cincinatti Gas & Electric Company for the period from July 1, 1984 to July 1, 1985; (2) policy no. 283 ANJ issued to PSI Energy, Inc. for the period from October 31, 1984 to October 31, 1985; and (3) policy no. X0004A1A99 issued to Cinergy for the period from July 1, 1999 to July 1, 2000. On November 1, 2000, AEGIS filed a Complaint for Declaratory Judgment against Cinergy. Subsequently, on February 23, 2004, Cinergy filed its Motion for Partial Summary Judgment asking the trial court to order AEGIS to provide payment of defense costs as they are incurred by Cinergy. On June 28, 2004, the trial court heard oral arguments, and subsequently, on July 8, 2004, the trial court entered its Order denying Cinergy's Motion for Partial Summary Judgment on Legal Defense Costs. On August 4, 2004, the trial court certified the ruling on Cinergy's motion. Thereafter, on September 2, 2004, Cinergy filed its Motion For Interlocutory Appeal which was initially denied by this court. However, on December 28, 2004, after filing a motion for reconsideration, we accepted jurisdiction over Cinergy's interlocutory appeal.

Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

In its interlocutory appeal against the trial court's denial of its Motion for Partial Summary Judgment, Cinergy claims that AEGIS is liable for Cinergy's defense costs because the Underlying Lawsuit is potentially covered by the policy. Because the timing of a first-layer insurer's duty to pay defense costs where the policy fails to expressly state a duty to manage the defense is an issue of first impression in Indiana, Cinergy urges this court to adopt out-of-state case law favoring payment of defense costs as soon as they are incurred and to institute a potential for coverage standard to govern their reimbursement.

### I. *Standard of Review*

■ Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse the ruling. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 783 (Ind.Ct.App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.*

■ Insurance contracts are subject to the same rules of construction as are other contracts. *Jackson v. Jones,* 804 N.E.2d 155, 158 (Ind.Ct.App.2004). Generally, the construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Mid State Bank v. 84 Lumber Co.,* 629 N.E.2d 909, 914 (Ind.Ct. App.1994). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. *Id.* Consequently, when a summary judgment ruling is based upon the construction of a written contract, the trial court has. either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.*

## II. *Analysis*

■ Cinergy now contends that the policy language requires AEGIS to pay Cinergy's defense costs as they are incurred upon exhaustion of the deductible or SIR. The policy language at issue in the PSI Policy and the Cincinnati Gas & Electric Company Policy reads as follows:

This Policy is to indemnify:

(a) The INSURED for any and all sums which the INSURED shall become legally obligated to pay as ULTIMATE NET LOSS by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under CONTRACT, including the INSURED'S proportionate share of any liability arising in any manner whatsoever out of the operations or existence of any JOINT VENTURE in which the INSURED has an interest, for damages because of BODILY INJURY, PERSONAL INJURY, or PROPERTY DAMAGE caused by an OCCURRENCE.

.        .        .        .        .

ULTIMATE NET LOSS is defined as:

The term ULTIMATE NET LOSS shall mean the total of the following sums with respect to each OCCURRENT or WRONGFUL ACT to which this POLICY applies:

(1) all sums which the INSURED shall become legally obligated to pay as damages either by adjudication or compromise with the consent of the COMPANY, after making proper deductions for all recoveries and salvages collectible and for other insurance that is in excess of the UNDERLYING LIMITS; and

(2) all expenses incurred by the INSURED in the investigation, negotiation, settlement and defenses of any claim or suit seeking such damages, excluding all salaries of employees and office expense of the INSURED.

However, the COMPANY shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance, except where that insurance is subject to at least 100 percent reimbursement by the INSURED.

(Appellant's App. pp. 165, 167). The Cinergy Policy is similarly structured, but includes separate definitions for indemnity and defense costs:

(G) DEFENSE COSTS: The term DEFENSE COSTS shall mean all expenses incurred by the INSURED in the investigation, negotiation, settlement and defense of any CLAIM or in the investigation of any OCCURRENCE or circumstance of which NOTICE OF CIRCUMSTANCES has been given, excluding all salaries, wages and benefit expenses of employees and office expenses of the INSURED; however, the COMPANY shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance, except where that insurance is subject to at least one hundred percent (100%) reimbursement by the INSURED.

(K) INDEMNITY: The term INDEMNITY shall mean all sums which the INSURED shall become legally obligated to pay as damages, including punitive damages where permitted by law, either by adjudication or compromise with the consent of the COMPANY, after making proper deductions for all recoveries and salvages collectible and for other insurance as provided for in CONDITION (H) (DISCOVERY PERIOD) hereof.

(Appellant's App. p. 204).

Although Cinergy based its main argument in its briefs upon the differences between a liability and indemnity insur-

ance policy, during its oral argument Cinergy discarded this distinction and, by focusing solely on the policy's language, Cinergy now argues that AEGIS is obliged to reimburse its defense costs as they are incurred regardless of the policy's characterization as a liability or indemnity policy. Using the policy's phrasing of "legally obligated to pay," Cinergy points to and references a majority of cases, all favoring the premise that a promise to pay defense costs that the policyholder is legally obligated to pay creates a duty to pay defense costs as they are incurred. *See Fight Against Coercive Tactics Network, Inc. v. Coregis Ins. Co.,* 926 F.Supp. 1426 (D.Colo.1996); *Gon v. First State Ins. Co.,* 871 F.2d 863 (9th Cir.1989).

Furthermore, Cinergy argues that because the "ultimate net loss" is defined as the separate obligations of a duty to pay defense costs and a duty to indemnify for damages, both obligations are independent of one another, with a duty to pay defense costs being much broader than the indemnity provision. As such, Cinergy maintains that AEGIS by refusing to pay defense costs as invoiced is conflating the two different duties. Next, Cinergy refers us to the express language of the policy and argues the importance of the use of the past tense "incurred" in relation to the defense costs. The company contends that since defense costs are phrased in the past tense ("incurred") while indemnity is in the future tense ("shall become obligated to pay"), a policyholder could reasonably expect two different schedules of payment to apply. Based on these arguments, Cinergy urges us to require AEGIS to reimburse Cinergy's defense costs as they are invoiced by its attorneys and experts.

Cinergy attempts to focus this court's attention on a plethora of out-of-state cases purporting to support its argument.

However, we find Cinergy's reliance on these cases to be misplaced in that most of the cases cited involve director and officers insurance policies with the obligation to pay the loss which insureds become legally obligated to pay. None of the cases cited contain the material element of defining this loss as the 'total' of defense costs and indemnity.

Even though we applaud Cinergy's elaborate argument, we cannot ignore the policy's plain language, defining ultimate net loss as the *total* of indemnity and defense costs. As we have to construe an insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases, or paragraphs, this definition of ultimate net loss as a 'totality' of two types of costs is conspicuously absent from Cinergy's argument. *See RMJ Enterprises, Inc. v. Scottsdale Ins. Co.,* 808 N.E.2d 159, 163 (Ind.Ct.App.2004), *reh'g denied.* Our reading of the insurance policies as a whole requires AEGIS to pay Cinergy the total of indemnity and defense costs with respect to each occurrence or wrongful act to which the policy applies and which the insured must become legally obligated to pay.

The record reflects that AEGIS' insurance policies lack an explicit duty to defend clause. Specifically, the policies clearly state that

> [AEGIS] shall not be called upon to assume charge of the settlement or defense of any claim, suit or proceeding, but [AEGIS] shall have the right and shall be given the opportunity to associate with [Cinergy] or [Cinergy's] underlying insurer, or both, in the defense and control of any claim, suit or proceeding relative to an OCCURRENCE or WRONGFUL ACT where the claim, suit or proceeding involves or may involve [AEGIS]. At all times, [Cinergy]

and [AEGIS] shall cooperate in the defense of such claim, suit or proceeding. (Appellant's App. p. 392) (emphasis added). In this light, AEGIS' sole obligation for payment of defense costs under the policy is part of the total ultimate net loss to be reimbursed at the time when Cinergy becomes legally obligated to pay as a result of liability imposed by law or assumed by it under the contract. Although defense costs could be assessed throughout the proceedings, we agree with AEGIS that, based on the policy's language, the *totality* of this ultimate net loss can only be calculated when (1) Cinergy becomes legally obligated to pay damages, minus the required deductions, increased by (2) the expenses incurred while defending the claims seeking those damages.

In addition, because the reimbursement of both the indemnity and defense costs are subsections of the policy's definition of ultimate net loss, they are also subject to the express requirement that only costs relating to occurrences or wrongful acts *to which this policy applies* are payable by AEGIS. In its brief, Cinergy distinguishes between a policy's application and coverage by attempting to linguistically define "apply" more broadly than "cover." We are not persuaded. While we agree with Cinergy that dictionary definitions can be used by courts to understand the meaning of terms, in the instant case, it is sufficient to use common sense in the reading of the policy. Under the plain terms of the policy, AEGIS is under no obligation to indemnify the ultimate net loss unless there is an occurrence or wrongful act as defined under the terms. Therefore, before an ultimate net loss can even exist, the occurrence or wrongful act must be covered under the policy, and cannot be excluded. Accordingly, we reject Cinergy's reading of the policy terms and conclude that 'apply' and 'covered' are used interchangeably.

In a similar vein, Cinergy seizes on the use of past tense ("incurred") in relation to defense costs versus the use of the future tense ("shall become legally obligated to pay") and argues that because defense costs payments are incurred long before the indemnity question is resolved, a policyholder could reasonably expect two different payment schedules to apply. We find this argument to be unavailing. The pivotal requirement in the payment of the defense costs lies in the definition of ultimate net loss as a total of incurred defense costs and damages which the insured becomes legally obligated to pay. This totality can only be calculated at the settlement or decision on coverage, at which point defense costs have been incurred leading up to this adjudication or compromise while the damages have only just been agreed upon.

█ In a continuing effort to circumvent the plain language of the insurance policy, Cinergy urges this court to adopt a 'potential for coverage' standard to govern the reimbursement of defense costs. In effect, Cinergy is requesting this court to extend the potential for coverage standard which is unique and inseparable from an insurers' duty to defend, to a policy lacking an explicit duty to defend clause. *See, e.g., Seymour Mfg. Co. v. Commercial Union Ins. Co.,* 665 N.E.2d 891 (Ind.1996), *reh'g denied.* However, unlike duty to defend clauses, which require the insurer to defend claims even if they are only arguably entitled to coverage, policies requiring the insurer to reimburse damages and defense costs relating to wrongful acts entitle the insured to reimbursement of these costs only when the underlying claims are covered by the policy. If this court were to extrapolate the unique requirements of a duty to defend clause to the instant situation, insurers would be required to ad-

vance defense costs before the resolution of the Underlying Lawsuit, inevitably resulting in payment of some losses that are not covered by the policies. Insurers would be prejudiced by such result, even if the insureds would be required to reimburse the insurers for these costs once it was determined that the losses were not covered by the policy. *See Kenai Corp. v. National Union Fire Insurance Company,* 136 B.R. 59 (S.D.N.Y.1992).

We agree with AEGIS' assertion that in the instant case Cinergy accepted the absence of any duty to defend and as a result traded the right to receive payment for potentially covered claims in exchange for the right to manage its own defense and be reimbursed for these costs upon determination of coverage. Cinergy cannot now be entitled to both the right to independently manage its defense and, at the same time, receive a check from AEGIS to cover its costs contemporaneously.

If we were to accept Cinergy's argument, we would impose a duty to defend on the insurer where none was contemplated in the contract. We decline to do so. Even though we interpreted the policy's clauses today, we do not need to equate this need of interpretation with the finding of ambiguity. Nor, do we find any latent ambiguity by virtue of the clause's silence about the timing of the payment of legal expenses. In sum, Cinergy's arguments are merely attempts to identify imperfections in the insurance policy that simply do not rise to the level of ambiguity. Accordingly, mindful of our standard of review and in light of the evidence before us, we find that the insurance policy is clear and unambiguous, awarding defense costs upon the determination that the Underlying Lawsuit is covered by the policy.

## CONCLUSION

Based on the foregoing, we find that the unambiguous language of the policy only entitles Cinergy to payment of defense costs upon determination of coverage of the Underlying Lawsuit.

Affirmed.

SULLIVAN, J., and NAJAM, J., concur.