Michael N. FLANNERY, an
individual, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
a corporation, and DOES 1 through
10, inclusive, Defendants.

No. Civ.A.97–B–210.

United States District Court,
D. Colorado.

June 3, 1999.

Thomas L. Roberts, Roberts & Zboyan, P.C., Denver, CO, for plaintiff.

Arthur R. Karstaedt III, Jamey W. Jamison, A. Peter Gregory, Harris, Karstaedt, Jamison & Powers, P.C., Englewood, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff, Michael Flannery, moves for partial summary judgment pursuant to Rule 56. Defendant Allstate Insurance Company ("Allstate") moves for determination of questions of law, which I deem a cross-motion for partial summary judgment pursuant to Rule 56. The motions are adequately briefed and the parties presented oral argument on April 30, 1999. For the reasons set forth below, I grant, in part, and deny, in part, both motions. Subject-matter jurisdiction exists under 28 U.S.C. § 1332.

## I. FACTS

The following material facts are undisputed unless otherwise noted. In 1991, Flannery Properties, a general partnership, purchased a vacation home in Vail, Colorado. In 1992, Mr. Flannery, a partner of Flannery Properties, purchased a homeowner's insurance policy from Allstate ("the Policy") insuring the vacation home. (Deluxe Homeowner's Policy No. 076181322, Ex. A of Plf.'s 1/14/99 Brf.) Mr. Flannery is the sole insured under the Policy. (Deluxe Homeowner's Policy No. 076181322, Ex. A of Plf.'s Compl.)

On November 22, 1995, Flannery Properties filed a complaint in the United States District Court for the District of Colorado against Ron Byrne and BMS Vail Limited Partnership ("the underlying litigation"). The underlying litigation, which involved a dispute over the legal boundaries between two properties, was assigned to District Court Judge Zita L. Weinshienk. Flannery Properties eventually averred eleven claims for relief in the underlying litigation: (1) reformation of deed due to fraud; (2) reformation of deed due to mutual mistake; (3) constructive trust; (4) fraud; (5) negligent misrepresentation; (6) breach of contract; (7) specific performance of a restrictive covenant of the "Byrne deed;" (8) specific performance of a restrictive covenant of the "Flannery deed;" (9) specific performance of covenants under the Vail Village First Filing; (10) promissory estoppel; and (11) trespass. Mr. Byrne counterclaimed against Flannery Properties and Mr. Flannery in his individual capacity, alleging: (1) slander of title; (2) abuse of process; (3) trespass; and (4) business disparagement. Mr. Byrne premised the slander of title and abuse of process counterclaims on Mr. Flannery's filing of a *lis pendens*. Mr. Byrne based the trespass counterclaim on the alleged destruction of a fence located on the disputed strip of land, and construction of a drainage system that caused water to flow onto Mr. Byrne's property. Mr. Byrne's business disparagement counterclaim derived from Mr. Flannery's purchase of an advertisement in a Vail, Colorado newspaper that allegedly damaged the reputation of Mr. Byrne and his business enterprises.

On January 4, 1996, Mr. Flannery, through his attorney, notified Allstate of the counterclaims and requested that Allstate defend and indemnify him. (Ltr. from Slamkowski to Pike of 1/22/96, Ex. 1 of Defs.' 1/15/99 Mot.) On March 4, 1996, Allstate informed Mr. Flannery that it had no duty to defend or indemnify him in the underlying litigation. (Ltr. from Nevens to Flannery of 3/4/96, Ex. D of Plf.'s 1/14/99 Brf.) Allstate based its denial of coverage on the intentional acts exclusion of the policy, but purportedly reserved its

right to assert additional grounds for denying coverage.

Mr. Flannery then commenced this anticipatory declaratory action in the Superior Court of Los Angeles County, California on September 17, 1996 (Case No. BC 157482), seeking declaratory relief as well as monetary damages for breach of contract and breach of implied covenant of good faith and fair dealing. Allstate removed the case to the United States District Court for the Central District of California on October 16, 1996 (Civil Case No. CV 96–7257 DT). Allstate then filed a motion to transfer the action to the United States District Court for the District of Colorado on October 30, 1996, which motion was granted by District Court Judge Dickran Tevrizian on January 21, 1997. Upon transfer, the case was assigned to Judge Weinshienk as related to the underlying litigation.

On November 5, 1997, Judge Weinshienk heard oral argument on the cross-motions for summary judgment of Mr. Flannery and Allstate. Mr. Flannery argued that Allstate had a duty to defend the trespass counterclaim pursuant to the Policy. At the conclusion of oral argument and in open court, Judge Weinshienk granted Mr. Flannery's motion for partial summary judgment and ruled that Allstate had a duty to defend the trespass counterclaim. Judge Weinshienk also denied Allstate's cross-motion for summary judgment. (Reporter's Transcript of 11/5/97 Proceedings, Ex. E of Plf.'s 1/14/99 Brf.)

The underlying litigation proceeded to trial on January 5, 1998. The jury returned its verdicts on January 16, 1998. I take judicial notice of the special verdict form and judgment, which entered on January 16 and 22, 1998, respectively. The jury found in favor of Flannery Properties and against Mr. Byrne on its negligent misrepresentation claim, awarding Flannery Properties $60,000. Mr. Byrne was adjudged the owner of the disputed strip of land and prevailed on his trespass counterclaim against Flannery Properties and Mr. Flannery, for which he was awarded $1.

Despite Judge Weinshienk's decision that Allstate had a duty to defend Mr. Flannery against the trespass counterclaim, Allstate refused to defend him in the underlying litigation. By a letter dated February 5, 1995, Allstate refused to pay the unapportioned attorney fees and costs submitted by Mr. Flannery, arguing primarily that it is not responsible for paying "all of Mr. Flannery's fees and costs incurred in pursuing his nine or ten claims against Byrne and in defending four other counterclaims that have no factual nexus to the trespass counterclaim." (Ltr. from Gregory to Smith of 2/5/95, Ex. G of Plf.'s 1/14/99 Brf.)

On January 28, 1998, Judge Weinshienk issued an order to show cause why this action should not be dismissed. Both Mr. Flannery and Allstate responded to the order to show cause by notifying the court that the claim for breach of covenant of good faith and fair dealing had not been adjudicated and remained viable. Judge Weinshienk recused herself on February 27, 1998 and the case was reassigned to me. I discharged the order to show cause on March 5, 1998.

## II. SUMMARY JUDGMENT STANDARDS

Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) The non-moving party has the burden of showing that issues of undetermined material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affida-

vits, if any, that it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 124 F.3d 1321, 1323 (10th Cir.1997). Nevertheless, summary judgment is inappropriate if genuine issues of material fact exist. *Id.*

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494.

## III. ANALYSIS OF CROSS–MOTIONS FOR SUMMARY JUDGMENT

### a. Choice of Law

In its motion for summary judgment, Allstate first argues that, as a matter of law, Colorado law governs the resolution of its dispute with Mr. Flannery. Mr. Flannery concedes that Colorado law applies and, therefore, I grant, as confessed, Allstate's motion for summary judgment on that issue.

### b. Law of the Case Doctrine

 Judge Weinshienk ruled that Allstate had a duty to defend Mr. Flannery against the trespass counterclaim in the underlying litigation. "The law of the case" is a judicial doctrine designed to promote finality. Once a court decides an issue, that doctrine comes into play to prevent the relitigation of that issue in subsequent proceedings in the same case. *Arizona v. California*, 460 U.S. 605, 618–619, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *United States v. Monsisvais*, 946 F.2d 114, 115–116 (10th Cir.1991). Unlike the doctrines of *res judicata* or collateral estoppel, "the law of the case doctrine has long been considered only a rule of practice in the courts and not a limit on their power." *Id.* at 116. Nevertheless, the circumstances justifying a departure from the law of the case doctrine are narrow: the law of the case must be followed "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Id.* at 117 (quoting *White v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967)); *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1536 n. 4 (10th Cir.1995). Allstate acknowledges that Judge Weinshienk's November 5, 1997 ruling is governed by the doctrine of law of the case. Allstate does not argue that any of the narrow circumstances justifying departure from that doctrine apply and, accordingly, I consider her

ruling binding for the purposes of my analysis.

### c. Whether an Insurer, by Breaching its Contractual Duty to Defend, is Precluded from Contesting Coverage

■ The first legal question presented by the parties is whether Allstate, by breaching its duty to defend, is precluded from raising contractual defenses to the duty to indemnify. Mr. Flannery argues that an insurer's breach of its duty to defend results in the creation of a duty to indemnify, even where no duty to indemnify exists under the insurance policy. Allstate disagrees, arguing that no Colorado court has precluded an insurer from contesting coverage when the insurer's refusal to defend is in good faith. (Defs.' 2/8/99 Brf. at 5.) For the reasons set forth below, I hold that an insurer does not forfeit its right to contest coverage when it has breached its obligation to defend its insured.

When the Colorado Supreme Court has not addressed an issue, I must anticipate how that Court would rule and hold accordingly. *Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 871 (10th Cir.1992). In so predicting, I consider "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988). Mr. Flannery argues that Colorado will join the minority of jurisdictions in holding that an insurer who breaches its duty to defend is precluded from raising coverage defenses. *See, e.g., Underwriters at Lloyds v. Denali Seafoods, Inc.*, 927 F.2d 459, 462–465 (9th Cir.1991) (applying Washington law); *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 240 (4th Cir.1990) (applying North Carolina law); *Jones v. Southern Marine & Aviation Underwriters, Inc.*, 888 F.2d 358, 363 (5th Cir.1989) (applying Mississippi law); *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1184 (7th Cir.1980) (applying Illinois law); *Sauer v. Home Indemnity Co.*, 841 P.2d 176, 183

(Alaska 1992); *Missionaries of Co. of the Mary, Inc. v. Aetna Casualty & Surety Co.*, 155 Conn. 104, 113–114, 230 A.2d 21, 25–26 (1967); *Conanicut Marine Services, Inc. v. Insurance Co. of North America*, 511 A.2d 967, 971 (R.I.1986). The majority of jurisdictions which have considered the question, however, do not preclude an insurer from contesting coverage because it breached its duty to defend. *See, e.g., Colonial Oil Industries, Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 and TO31504671*, 133 F.3d 1404, 1405 (11th Cir.1998) (applying Georgia law) (" 'The rationale for this rule is that when the insurer breaches the contract by wrongfully refusing to provide a defense, the insured is entitled to receive only what it is owed under the contract— the cost of defense.' "); *Hamlin Inc. v. Hartford Accident and Indemnity Co.*, 86 F.3d 93, 94–95 (7th Cir.1996) (applying Wisconsin law); *Illinois Ins. Exchange v. Scottsdale Ins. Co.*, 679 So.2d 355, 357–358 (Fla.App.1996); *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1493 (5th Cir.1992) (applying Texas law) ("Even an unfaithful insurer may not be bound to an insurance contract it did not write."); *Servants of Paraclete, Inc. v. Great American Ins. Co.*, 866 F.Supp. 1560, 1577 (D.N.M.1994) (predicting New Mexico law); *Johnson v. Studyvin*, 828 F.Supp. 877, 886–887 (D.Kan.1993) (predicting Kansas law); *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 875 P.2d 894, 912–913 (1994) ("[A] blanket application of coverage by waiver or estoppel, based upon the failure to provide a defense, subverts any meaningful distinction between the duty to defend and the separate duty to indemnify and, in many cases, serves no more than to punish the insurer for breach of a contractual duty."); *Polaroid Corp. v. Travelers Indemnity Co.*, 414 Mass. 747, 760–761, 610 N.E.2d 912, 920 (Mass.1993); *Foreman v. Jongkind Bros., Inc.*, 625 N.E.2d 463, 468 (Ind.App.1993); *Sellie v. North Dakota Ins. Guaranty Ass'n*, 494 N.W.2d 151, 156 (N.D.1992); *Alton M. Johnson Co. v.*

*M.A.I. Co.,* 463 N.W.2d 277, 279 (Minn. 1990); *Alabama Hospital Ass'n Trust v. Mutual Assurance Soc'y of Alabama,* 538 So.2d 1209, 1216 (Ala.1989); *Cincinnati Ins. Co. v. Vance,* 730 S.W.2d 521 (Ky. 1987); *Sunseri v. Camperos Del Valle Stables, Inc.,* 185 Cal.App.3d 559, 561–562, 230 Cal.Rptr. 23, 24 (1986); *Servidone Construction Corp. v. Security Ins. Co. of Hartford,* 64 N.Y.2d 419, 488 N.Y.S.2d 139, 477 N.E.2d 441, 444 (1985); *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 683 P.2d 440, 447 (App.1984) ("We question the propriety of utilizing a form of estoppel as a punitive measure against an insurer for breach of a contractual duty to defend. Rather, we believe that the sanction for that breach should be governed by ordinary principles of contract law."); *Fireman's Fund Ins. Co. v. Rairigh,* 59 Md.App. 305, 320, 475 A.2d 509, 516 (1984). *See also* Allan W. Windt, Insurance Claims & Disputes § 4.35, at 213 (1988) ("The vast majority of cases have properly held that an insurer's unjustified refusal to defend does not estop it from later denying coverage under its duty to indemnify.... The insurer's breach of contract should not ... be used as a method of obtaining coverage for the insured that the insured did not purchase."). To the extent that Mr. Flannery argues public policy would be furthered by Colorado's adoption of the minority rule, I note that majority rule also impacts certain public policies favorably. *See, generally,* Todd J. Weiss, *A Natural Law Approach to Remedies for the Liability Insurer's Breach of the Duty to Defend: Is Estoppel of Coverage Defenses Just?,* 57 Alb.L.Rev. 145 (1993) (weighing public policy considerations of both rules); Susan Randall, *Redefining the Insurer's Duty to Defend,* 2 Conn.Ins.L.J. 221 (1997) (discussing public policy considerations).

Like the majority of courts, the Colorado Supreme Court has expressly declared that "[t]he duty to defend and the duty to indemnify are separate and distinct." *Hecla Mining Co.,* 811 P.2d at 1086 n. 5 (citing *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.,* 877 F.2d 1146, 1148 (2d Cir.1989)); *accord Constitution Associates v. New Hampshire Ins. Co.,* 930 P.2d 556, 563 (Colo.1996) ("[W]here there is a duty to defend, there is not necessarily a duty to indemnify."). If the two duties are truly "separate and distinct," then an insurer's wrongful failure to defend should not result in a loss of an indemnity defense. Further, at least one Colorado court, when presented with the opportunity to adopt the minority rule advocated by Mr. Flannery, did not do so. *See, e.g., Sims v. Sperry,* 835 P.2d 565, 571–572 (Colo.App. 1992) (holding that the insurer breached its duty to defend and then determining, on the merits, that the insurer also breached its duty to indemnify).

Mr. Flannery contends that the following *dicta* from *Hecla Mining Co.* suggests that the Colorado Supreme Court, if presented with the opportunity to do so, would adopt the minority rule:

> The appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated.

*Hecla Mining Co.,* 811 P.2d at 1089–1090 (citing *Reliance Ins. Co. of Illinois v. Martin,* 126 Ill.App.3d 94, 97, 81 Ill.Dec. 587, 467 N.E.2d 287, 290 (1984), and *City of Willoughby Hills v. Cincinnati Ins. Co.,* 9 Ohio St.3d 177, 180, 459 N.E.2d 555, 558 (1984)). I do not, however, interpret that language as implying imminent adoption of the minority rule by the Colorado Supreme Court. The procedures available to an insurer contesting its duty to defend is a separate issue, distinct from the legal consequences of an insurer's breach of its duty to defend.

Nor do I read *Hecla Mining Co.* as compelling certain behavior by an insurer that disputes a duty to defend. Fairly read, *Hecla Mining Co.* states that an

insurer who believes that it is under no obligation to defend may: (1) provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial of the underlying litigation prove that the incident resulting in liability was not covered by the policy; or (2) file a declaratory judgment action after the underlying litigation has been adjudicated. My interpretation of *Hecla Mining Co.* is shared by the Colorado Court of Appeals and one Colorado commentator. *See, e.g., Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger,* 934 P.2d 909, 911 (Colo. App.1997); *Wheeler v. Reese,* 835 P.2d 572, 577 (Colo.App.1992); Stewart McNab, *The Duty to Defend in Colorado After Hecla Mining,* 20 COLO.LAW. 2095, 2097 (1991) ("In cases where the existence of coverage is uncertain, the insurer can choose to defend but can hope to get its money back only after further litigation. Alternatively, the insurer can choose not to defend, but it then takes the risk of a bad faith judgment if it makes the wrong decision."). Mr. Flannery imposes a strained reading on the quoted excerpt, suggesting that the insurer has "one choice" and "must defend under a reservation of rights and seek reimbursement of defense costs from the insured if the facts at trial or in a later declaratory judgment action prove that the claim was not covered." (Plf.'s 1/14/99 Brf. at 7.) I decline to adopt Mr. Flannery's unreasonable interpretation of *Hecla.*

Because Colorado adheres to the doctrinal distinction between an insurer's duty to defend and an insurer's duty to indemnify, and because the majority of jurisdictions hold that insurer's breach of its duty to defend does not constitute forfeiture of its right to contest coverage, I conclude that Colorado will likely adopt the majority rule. I hold, therefore, that an insurer is not precluded from contesting coverage when it has breached its obligation to defend its insured, even if such breach was in bad faith.

### d. Whether an Insurer, by Breaching its Contractual Duty to Defend, Forfeits its Right to Apportion or Challenge the Reasonableness of the Attorney Fees and Costs Allegedly Incurred by its Insured During Prosecution of the Underlying Litigation

The second question presented by the parties is whether Allstate, by breaching its duty to defend, forfeited its right to apportion or challenge the reasonableness of attorney fees and costs incurred by Mr. Flannery during the underlying litigation. Mr. Flannery argues that Allstate, because of its breach, is not entitled to apportion attorney fees between covered and noncovered claims, or challenge the reasonableness of such attorney fees. In opposition, Allstate contends that its maximum liability for attorney fees and costs should be limited to the attorney fees and costs incurred by Mr. Flannery in defending the trespass counterclaim. Allstate seeks a determination that it is not liable for the attorney fees and costs incurred by: (1) Flannery Properties; or (2) Mr. Flannery in defending against the nontrespass counterclaims (slander of title, abuse of process, and business disparagement). I address each issue separately.

#### 1. *Attorney Fees and Costs Incurred by Flannery Properties*

As noted above, Flannery Properties is not an insured beneficiary under the Policy. (Deluxe Homeowner's Policy No. 076181322, Ex. A of Plf.'s Compl.) Nor is Flannery Properties a party to this action. Consequently, there exists no legal basis to support an award of attorney fees and costs in favor of Flannery Properties. *See Hecla Mining Co.,* 811 P.2d at 1089 (Colo. 1991) ("the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy"); *Kane v. Royal Ins. Co. of America,* 768 P.2d 678, 683 (Colo.1989) ("An insurer cannot be held liable beyond the scope of risks which have been clearly

covered in the insurance policy."); *Alex Robertson Co. v. Imperial Casualty & Indemnity Co.*, 8 Cal.App.4th 338, 343, 10 Cal.Rptr.2d 165, 168 (1992) (there exists no duty to defend a third-party where the "policy provides in clear and unambiguous language that [insurer's] duty to defend extends only to [named insured and not to third party]"). The record before me indicates that, although Flannery Properties brought several claims against Mr. Byrne and BMS Vail Limited Partnership, Mr. Flannery did not. Mr. Flannery, in his individual capacity, only participated as a counterclaim defendant. Accordingly, Allstate is not liable for any attorney fees and costs incurred by, or reasonably allocated to, Flannery Properties in the underlying litigation. *See Sauk County v. Employers Ins.*, 202 Wis.2d 433, 434, 550 N.W.2d 439, 442 (1996) (insurer had no duty to represent county with regard to its prosecution of federal suit against other parties, but only to defend county on counterclaims brought against it); *National Casualty Ins. Co. v. City of Mount Vernon*, 128 A.D.2d 332, 335, 515 N.Y.S.2d 267, 269 (1987) (insured was not entitled to recover expenses incurred in prosecuting counterclaim). To the extent that Allstate argues it is not liable for the attorney fees and costs incurred by, or reasonably allocated to, Flannery Properties, I grant its cross-motion for summary judgment. To the extent Mr. Flannery contends that he is entitled, as a matter of law, to recoup attorney fees and costs incurred by, or reasonably allocated to, Flannery Properties, I deny his motion for summary judgment.

2. *Attorney Fees and Costs Incurred by Mr. Flannery in Defending Against the Nontrespass Counterclaims*

■ In the underlying litigation, Mr. Byrne brought four counterclaims against Flannery Properties and Mr. Flannery in his individual capacity: trespass, slander of title, abuse of process, and business disparagement. Although Judge Weinshienk ruled that Allstate had a duty to defend the trespass counterclaim, an insurer must defend against all claims asserted against its insured if any one of them is potentially covered by the insurance policy. *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 85 (Colo.App.1997) (citing *Hecla Mining Co., supra); TerraMatrix, Inc. v. United States Fire Ins. Co.*, 939 P.2d 483, 486 (Colo.App.1997) (also citing *Hecla Mining Co.*). Consequently, Allstate's breach of its duty to defend Mr. Flannery extends to all counterclaims brought against him in the underlying litigation.

Allstate cites primarily *Bohrer v. Church Mutual Ins. Co.*, 965 P.2d 1258 (Colo.1998), and *Fight Against Coercive Tactics Network, Inc.*, 926 F.Supp. 1426 (D.Colo.1996) (Kane, J.), in support of its right to apportion the attorney fees incurred by Mr. Flannery between the trespass counterclaim and nontrespass counterclaims. In *Bohrer*, a victim of sexual assault obtained a judgment against a youth minister for compensatory damages. *Bohrer*, 965 P.2d at 1259. To collect the compensatory damages award, the victim commenced a garnishment proceeding against the insurance company that provided coverage to the youth minister's employer. *Id.* The insurer denied coverage. The District Court dismissed the garnishment action, concluding that the insurance policy at issue did not afford coverage. *Id.* at 1261. The Colorado Court of Appeals affirmed on different grounds, deciding that: (1) the youth minister's sexual misconduct was excluded from coverage by the insurance policy; and (2) the youth minister's counseling activities, while arguably covered by the insurance policy, were inextricably intertwined with the excluded sexual misconduct. *Id.* The Colorado Supreme Court reversed, finding that the youth minister's sexual misconduct occurred after a prolonged period of counseling and, therefore, the covered conduct and excluded conduct were separable. *Id.* at 1266. Thus, the Colorado Supreme Court remanded and directed the District Court to apportion the compensatory damages award between the coverage and the

exclusion. *Id.* Yet the insurer in *Bohrer,* unlike Allstate here, provided its insured with a defense under a reservation of rights. *Id.* at 1266 n. 7. Bohrer fails, therefore, to provide conclusive support for Allstate's position.

*Fight Against Coercive Tactics Network* is also inapposite. In that case, a nonprofit organization filed a declaratory judgment action against its liability insurer, seeking a determination of insurer's duty to pay defense costs incurred in underlying litigation. *Fight Against Coercive Tactics Network,* 926 F.Supp. at 1434. The District Court appointed a special master "to monitor the defense legal expenses so as to keep track of those which are attributable to covered and uncovered matters and to permit early apportionment if it should emerge that some portions of the incurred expenses prove to be uncovered and easily severable, without prejudice to the defense of the covered aspects of the claims." *Id.* at 1436. *Fight Against Coercive Tactics Network* is distinguishable on two grounds. First, the District Court ruled on the declaratory judgment action during the infancy of the underlying litigation. *Id.* at 1428. Second, the District Court did not hold that the insurer had breached its duty to defend. Rather, the District Court concluded that the "duty to provide reimbursement for defense costs as they are incurred ... [is] a duty separate from the duty to defend." *Id.* at 1432 (citations omitted).

■ Allstate has not cited, and I have not found, any Colorado cases that have squarely considered the issue as framed here. Nor are the extra-jurisdictional cases cited by Allstate sympathetic to its position, for in each case the insurer provided a complete or partial defense to its insured before seeking reimbursement or apportionment of attorney fees. *See, e.g., Okada v. MGIC Indemnity Corp.,* 823 F.2d 276, 279 (9th Cir.1986) (applying Hawaii law) (insurer agreed to pay defense costs as they came due, but reserved its right to contest coverage and demand reimbursement of defense costs); *Enron*

*Corp. v. Lawyers Title Ins. Corp.,* 940 F.2d 307, 309 (8th Cir.1991) (applying Virgin Islands law) (insurer retained law firm to represent its insured, but refused to reimburse its insured for the expenses of the insured's separate counsel); *EEOC v. Southern Publishing Co., Inc.,* 894 F.2d 785, 788 (5th Cir.1990) (applying Mississippi law) (insurer intervened in underlying litigation and obtained dismissal of only potentially covered claims); *Harborside Refrigerated Services, Inc. v. IARW Ins. Co., Ltd.,* 759 F.2d 829, 830 (11th Cir.1985) (applying Florida law) (insurer defended its insured on one of four claims asserted). Indeed, the majority of extra-jurisdictional courts that have squarely addressed the issue express little sympathy for Allstate's position. *See, e.g., State v. Pacific Indemnity Co.,* 63 Cal.App.4th 1535, 1546–1547, 75 Cal.Rptr.2d 69, 76 (1998) (To seek reimbursement from the insured for defense costs that could be specifically allocated to the defense of claims that are not even potentially covered, the insured must undertake a defense of its insured upon an express reservation of rights.) (citing *Buss v. Superior Court,* 16 Cal.4th 35, 61 n. 27, 65 Cal.Rptr.2d 366, 384 n. 27, 939 P.2d 766, 784 n. 27 (1997) (creating a "quasi-contractual" right of a liability insurer to collect from its insured reimbursement for defense costs of claims that are not even potentially covered only if the insurer specifically reserved its right to seek reimbursement of defense costs at or before the time it provided a defense)); *JG Industries, Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 218 Ill.App.3d 1061, 1067–1069, 161 Ill.Dec. 613, 578 N.E.2d 1259, 1262–1263 (1991) (collecting cases); *Matagorda County v. Texas Ass'n of Counties County Government Risk Management Pool,* 975 S.W.2d 782, 784–785 (Tex.App.1998) (absent specific notice to the insured that he may later be charged for defense expenses, the insurer has no right to reimbursement); *Resure, Inc. v. Chemical Distributors, Inc.,* 927 F.Supp. 190, 194 (M.D.La.1996), *aff'd,* 114 F.3d 1184 (5th Cir.1997) (applying New Mexico

law) (same); *Knapp v. Commonwealth Land Title Ins. Co., Inc.,* 932 F.Supp. 1169, 1172 (D.Minn.1996) (applying Minnesota law) (same). Lastly, I note that Allstate does not cite to any policy language allowing for apportionment of attorney fees under the circumstances presented here. I hold, therefore, that Allstate must pay for the reasonable defense costs of Mr. Flannery attributable to the trespass counterclaim and the nontrespass counterclaims. This holding comports with the clearly established principles that: (1) the duty to defend is broader than the duty to indemnify; (2) an insurer must defend against all claims asserted against its insured if any one of them is potentially covered by the insurance policy; and (3) even when resolution of an indemnity suit conclusively shows that no coverage existed, the duty to defend may still have existed.

**c. Whether an Insured is Entitled to an Award of Attorney Fees Incurred in this Action**

■■ Mr. Flannery contends that, as a matter of law, he is entitled to an award of attorney fees incurred in prosecuting this action against Allstate. Under the "American rule," attorney fees are not recoverable by a prevailing party upon successful litigation of a bad faith breach of insurance contract claim unless provided for by a specific statute, court rule, or contract provision. *Bernhard v. Farmers Ins. Exchange,* 915 P.2d 1285, 1287 (Colo.1996). Recognizing that rule, Mr. Flannery argues that the following language of the insurance policy at issue here provides for attorney fees:

We will pay, in addition to the limits of liability: ... any ... reasonable expenses incurred by an insured person at our request.

(Deluxe Homeowner's Policy No. 076181322, Ex. A of Plf.'s 1/14/99 Brf at 32, ¶ 1(e) (emphasis in original).) Mr. Flannery cites *Allstate Ins. Co. v. Robins,* 42 Colo.App. 539, 597 P.2d 1052 (1979) (Coyte, VanCise, and Sternberg, JJ.), in which the Colorado Court of Appeals held

that nearly identical policy language entitled an insured defending a declaratory judgment action to recover attorney fees. In so holding, the Colorado Court of Appeals stated:

In *Upland Mutual Insurance, Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974), the insurance company contended that its insurance policy did not afford coverage, and accordingly filed a declaratory judgment action against its insured seeking a determination of its liability. In determining the identical issue involved in the present case, the court found coverage and held that the company must reimburse the insured for any necessary legal fees and expenses incurred in the declaratory judgment suit. In arriving at that result, the court quoted a comment from 7A J. Appleman, Insurance Law & Practice § 4691 (1962), criticizing decisions ruling that insurers were not liable for their insureds' attorneys fees incurred in determining that coverage existed:

" '(D)espite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above....' "

The court in *Upland* concluded that the award of attorney's fees was proper "be-

cause the filing of this suit constituted a 'request' by Upland and therefore the company is obligated under its policy to reimburse the insured ... for all reasonable expenses incurred at the company's request." *Accord, Standard Accident Insurance Co. v. Hull,* 91 F.Supp. 65 (D.Cal.1950); *Occidental Fire and Casualty Co. v. Cook,* 92 Idaho 7, 435 P.2d 364 (1967); *Security Mutual Casualty Co. v. Luthi,* 303 Minn. 161, 226 N.W.2d 878 (1975). All of the cited cases involve the construction of the phrase, "the company shall reimburse the insured for all reasonable expenses incurred at company's request," and its application to payment of attorney's fees expended by the insured in defending a declaratory judgment action instituted by the insurance company. In each case the court allowed the insured to recover its expenses (reasonable attorney's fees) as a matter of contract. This result merely restores the insured to the position he would have occupied had the company honored its contract in the first instance, and we adopt it as the applicable principle.

*Robins,* 597 P.2d at 1052–1053. *Robins* is firmly grounded in the contract exception to the American rule and, therefore, was not overruled, expressly or impliedly, by *Bernhard, supra.* Inasmuch as *Robins* is viable precedent, I hold that Mr. Flannery may recover his reasonable attorney fees in prosecuting this action against Allstate. Although Allstate argues that *Robins* is inapposite because Mr. Flannery commenced this lawsuit, I see no reason to penalize the insured for winning the race to the courthouse. Here, Mr. Flannery commenced this lawsuit during the infancy of the underlying litigation, presumably to obtain declaratory relief regarding Allstate's duty to defend. Mr. Flannery's inclusion of a claim for breach of an implied covenant of good faith and fair dealing in his original complaint in this action furthers judicial economy. Moreover, a contrary holding would reward insurers who force their insureds to file claims for declaratory relief after the underlying liti-

gation concludes. Indeed, the insurer who fails to file a declaratory action after the conclusion of the underlying litigation is not substantively different than the insurer who promptly files a declaratory action—both "request" an insured to incur attorney fees as defined by *Robins.*

Accordingly, I ORDER that:

(1) plaintiff's motion for summary judgment is GRANTED, in part, and DENIED, in part, as set forth with more particularity above; and

(2) defendant's motion for determination of questions of law, deemed a cross-motion for summary judgment under Rule 56, is GRANTED, in part, and DENIED, in part, as set forth with more particularity above.