**FARMINGTON CASUALTY COMPANY, Plaintiff,**

v.

**UNITED EDUCATORS INSURANCE RISK RETENTION GROUP, INC., Defendant.**

**Civil Action No. 99–D–213.**

United States District Court, D. Colorado.

Dec. 3, 1999.

Kevin F. Amatuzio, Todd E. Kastetter, Joel A. Kolodny, Montgomery, Kolodny, Amatuzio, Dusbabek & Parker LLP, Denver, CO, for Farmington Cas. Co., plaintiff.

Timothy P. Schimberg, Fowler, Schimberg & Flanagan, PC, Denver, CO, for United Educators Ins. Risk Retention Group, Inc., defendant.

**ORDER**

DANIEL, District Judge.

## I. *INTRODUCTION AND FACTUAL BACKGROUND*

This case involves the issue of allocation of defense costs between two insurance companies. The case arises from two separate lawsuits filed by Dr. Sheila Deitz ("Dr.Deitz") against the University of Denver ("the University") and others in relation to her denial of tenure, her termination from the post as Director of the Professional Psychology Center, and her ultimate termination from employment with the University. Her first lawsuit was filed in this Court, Case No. 95–WM–2756, on October 31, 1995. The second lawsuit was filed in Denver District Court, No. 97–CV–2211, and removed here as Case No. 97–WM–897. The cases are now consolidated. The events at issue in the lawsuits occurred during the time period from 1991 to 1996. The consolidated case is set to go to trial April 3, 2000. The lawsuit contains numerous claims against Defendants, in-

cluding a number of employment claims and a defamation claim.

Both parties in this case insure the University and seek a declaratory judgment as to who is obligated to contribute to the defense costs of the suit. Farmington Casualty Company ("Farmington") contends that its Commercial General Liability ("CGL") policies issued to the University for the period from July 1, 1992 through July 1, 1997, cover only the claim in the nature of defamation, which is asserted only in the first lawsuit, and that the remaining claims are not covered by its policies. Farmington further asserts that the remaining claims are covered under the policies of United Educators Insurance Risk Retention Group ("UE") and that Farmington is entitled to equitable contribution and/or subrogation from UE for the costs of defense in the lawsuit.

UE issued an Educators Legal Liability Insurance Policy including Educational Entity Reimbursement Claims Made, Costs Inclusive Basis ("ELL Policy") to the University for the policy period July 1, 1993 to July 1, 1994 (the "93–94" policy). UE also issued a policy for the period July 1, 1996 to July 1, 1997 (the "96–97" policy). However, it is contended by UE that only the 93–94 policy is implicated in the lawsuit. UE asserts that its insurance policy is excess to the Farmington coverage, based on an "other insurance" clause that makes it excess if other insurance covers the same loss. Further, UE contends that it does not have a duty to defend under the policy, and that it's only duty is to reimburse defense costs where there is no other insurance. Since Farmington's policy is primary, covering at least one of the claims in the lawsuit, Farmington must defend the entire lawsuit and UE has no duty to reimburse defense costs. In short, UE contends that regardless of how many claims are potentially covered under the two insurers' policies, UE's obligation to pay any defense costs is not implicated because UE's policy is excess to Farmington's policy. Finally, UE asserts that,

contrary to Farmington's assertion, defense costs cannot be allocated between the insurers on a claim-by-claim basis, and that its insurance does not provide potential coverage for the remaining claims in the lawsuit.

Also at issue in this insurance coverage dispute is how Deitz' filing of a second lawsuit, which was subsequently consolidated with the first lawsuit, impacts the coverage issues that I must decide. It is undisputed that the second lawsuit does not contain a defamation claim and that Farmington's CGL policy does not provide coverage for the causes of action asserted in the second complaint. Farmington issued a letter to the University in connection with this lawsuit asserting that there was no coverage and that it had no duty to defend. Farmington contends that, even if equitable contribution or subrogation does not apply to UE in connection with the first lawsuit, UE is required to defend the second lawsuit, since its coverage is primary. Further, Farmington contends that the second lawsuit is not covered by UE's 1993–1994 policy, but by its 1996–1997 policy which is more similar to Farmington's policy in terms of coverage.

UE contends that the 1996–1997 policy is not applicable because its policies are "claims-made" policies, the claim first arose in the 1993–1994 period, and the continuing acts claimed by Deitz in her second lawsuit all relate to the first claim. Further, UE contends that it is not obligated to defend the second lawsuit since it was consolidated with the first lawsuit, making it one lawsuit. Because Farmington has a duty to defend at least one of the claims in that lawsuit (the defamation claim), it must defend the entire lawsuit. Accordingly, UE argues that it has no duty to reimburse defense costs in the consolidated case since it remains an excess carrier.

## II. *ANALYSIS*

I first address which law applies to the issues in this lawsuit, and then address

which policy of UE's applies to the claims asserted in the consolidated lawsuits, since that may affect my rulings on the substantive issues. I next decide the issues of whether UE is required to pay a portion of the defense costs associated with the lawsuit under equitable contribution or subrogation theories. Finally, I address the impact of the second lawsuit, and whether UE is required to defend or reimburse defense costs in that lawsuit under the language of its policies.

I find, for the reasons stated below, that Defendant's motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment DENIED as they relate to Farmington's equitable contribution and subrogation arguments. However, on the issue of whether UE is obligated to pay defense costs associated with the second lawsuit under its policy, on the basis that Farmington's policy does not cover that lawsuit, I find that Plaintiff's motion for summary judgment should be GRANTED, and Defendant's motion for summary judgment DENIED.

### 1. *Which Law Applies*

Turning to the issue of choice of law in this case, the UE policies state that the policies shall be construed in accordance with the laws of New York. Farmington argues that this makes New York law applicable to the entirety of the claims at issue, since the claims depend on interpretation of UE's policies. However, the choice of law provision in the UE policies does not address how to handle the other claims at issue; namely, the laws of contribution and subrogation and the interpretation of Farmington's policies.

I agree with UE that to the extent I am required to construe the UE policies, I must apply the choice of law provisions in the policies and apply New York law. *See Pirkey v. Hospital Corp. of America*, 483 F.Supp. 770, 772 (D.Colo.1980) (applying Restatement (Second) Conflict of Laws, Sec. 187). However, to the extent that I am addressing the laws of contribution or

subrogation or addressing Farmington's policies, I find that the choice of law provision in UE's policy does not apply. Thus, since this is a diversity case, I must apply Colorado choice of law principles. *New York Life Ins. Co. v. KN Energy, Inc.*, 80 F.3d 405, 409 (10th Cir.1996). Colorado applies "the most significant relationship test" for resolving conflict of laws questions in regard to contracts. *TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1490 (10th Cir.1995). Here, I think that Colorado has the most significant relationship to this case since the insured is located here, the policies were issued here to a Colorado resident, and the lawsuit was filed in Colorado by a Colorado resident. However, ultimately, I don't think the distinction between New York and Colorado law is determinative for purposes of my ruling.

### 2. *Which Policy of UE's Applies to the Events in the Second Lawsuit*

■ I next address the issue of which policy of UE applies to the second lawsuit. This is important because I find the language of the policies to be relevant to the contribution and subrogation arguments, and the 1996–1997 policy has language that is not as favorable to UE in connection with its duty to defend and "other insurance" clause as the earlier policy. For the reasons stated below, I find that the 1993–1994 policy controls the claims asserted in both the first and second lawsuit.

UE has claims-made policies. The 1993–1994 policy states, "[a]ll Claims (regardless of whether they involve one or more Insureds) or Related Wrongful Acts shall be considered a single Claim, and such single Claim shall be deemed to have arisen in the Policy Period in which it was first reported to the Company." Ex. 14, p. 10. "Wrongful Act" means "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by any Individual Insured in the discharge of duties to an Included Entity"; or "any matter claimed against an Insured solely by reason of such capacity." *Id.*, p.

11. The 1996–1997 policy states that the policy does not apply to any "Claim already made at the date of First Coverage or any matter, fact or circumstance, that prior to the date of First Coverage, was the subject of prior litigation, court order, settlement agreement, or notice to any insurer under any other policy." Ex. 20, p. 5.

Here, I find that the second lawsuit, which alleges claims regarding the actual termination of Dr. Deitz, is related to the Wrongful Acts of the University in the first lawsuit. Both lawsuits arise from the same set of facts and the second lawsuit references the ongoing alleged discriminatory acts of the University which ultimately led to Dr. Deitz' termination. This is supported by Magistrate Judge Schlatter's Order granting consolidation (Ex. 8) which states that Plaintiff probably should have simply sought leave to amend the complaint in the first lawsuit, and that the second lawsuit should not be treated as a new and independent action. Thus, I find that the claims in the second lawsuit constitute the same claim for purposes of coverage and, as such, they are subject to coverage under the 1993–1994 policy.

3. *Whether Farmington is Entitled to Defense Costs from UE Under a Contribution Theory*

■ Farmington argues on this issue that it should be allowed to circumvent the "other insurance" clause of UE in its 1993–1994 policy and the clause providing that UE has no duty to defend, such that Farmington may obtain contribution from UE on defense costs. Relevant to this issue, UE's policy provides that it has a duty to pay loss that the insured shall become legally obligated to pay in excess of the applicable Retention. Ex. 14, p. 10. Loss includes costs, which include the "costs, charges, and expense of investigation and defense of legal actions...." *Id.* The policy further provides that "[i]t shall be the duty of the Individual Insureds ... and not the duty of the Company to defend

claims made against the Insureds; provided that no Costs shall be incurred without the Company's consent." *Id.*, p. 12. In other words, although there is no express duty to defend under the policy, there is a duty to pay costs of defense and any loss the insured becomes legally obligated to pay.

However, this duty to pay costs of defense and loss is dependent on whether there is other insurance that covers the loss. This is because UE's policy contains an "other insurance" clause. This clause states that, "[i]f other valid and collectable insurance with any other insurer ... is available to the Insureds covering a Loss covered by this Policy, other than insurance which is expressly and specifically in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance." *Id,* p. 14. It is undisputed that the Farmington policy does cover a "Loss" covered by UE's policy; specifically, a claim of "oral or written publication or material that slanders or libels a person or organization or violates the right to privacy, or disparages a person's or organization's goods, products, services, character or reputation." *Compare* UE's policy, Ex. 14, p. 7 with Farmington's policy, Ex. 10, p. 14(d) and (e).

In contrast, Farmington's CGL policy provides that it "ha[s] the right and duty to defend any 'suit' seeking damages" for "bodily injury" or "personal injury." Ex. 10, p. 1, 4. The defamation claim is considered "personal injury." *Id.* at p. 14(d) and (e). Further, the policy also contains an "other insurance" clause that states:

If other valid and collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies [b does not apply in this case]. If this insurance is primary, our obligations are not affected unless any of the other insurance is also

primary. Then, we will share with all the other insurance by the method described in c. below.

*Id.* pp. 9–10. The method of sharing is described as equal shares if all other insurance permit contribution that way or pro rata based on the policy limits. *Id.* p. 10.

██ In essence, then, the case involves Farmington's pro rata "other insurance" clause versus UE's excess "other insurance" clause, combined with a lack of a duty to defend on the part of UE. The general law, as acknowledged by Farmington, is that an "other insurance" clause which makes a policy excess if there is other insurance will be enforced, so long as there is not a conflicting "other insurance" clause making both policies excess. *See Colonial Ins. Co. of California v. American Hardware Mut. Ins. Co.,* 969 P.2d 796, 800 (Colo.App.1998); *Finizio v. American Hardware Mut. Ins. Co.,* 967 P.2d 188, 191–92 (Colo.App.1998), *cert. denied* (Oct. 26, 1998).

This general rule is reinforced by the fact that UE has no duty to defend in its policy. Decisions by judges of this Court and the Colorado Court of Appeals have specifically recognized that the duty to reimburse defense costs, as UE's policy requires, is different from the duty to defend. *See Fight Against Coercive Tactics Network, Inc. v. Coregis Ins. Co.,* 926 F.Supp. 1426, 1432 (D.Colo.1996); *Bertagnolli v. Ass'n of Trial Lawyers Assurance,* 934 P.2d 916, 918 (Colo.App.1997). The lack of a duty to defend, combined with the "other insurance" clause that says that UE has no duty to pay losses if there is other insurance, means that UE cannot be required to pay defense costs where there is other insurance that covers the same loss. The fact that UE may ultimately have to pay on a settlement if the judgment exceeds the primary limits is not relevant to this analysis, since the duty to defend is clearly broader than the duty to indemnify. *See City of Englewood v. Commercial Union Assurance Cos.,* 940 P.2d 948, 953 (Colo.App.1996), *aff'd in part and rev'd in part on other grounds,* 984 P.2d 606 (Colo. 1999).

As to the specific type of situation at issue, involving a CGL carrier whose policy provides that it is primary (and with a pro rata other insurance clause), versus an ELL carrier like UE or similar type carrier with an "other insurance" clause, UE cites a number of cases that hold, in accordance with the general rule stated above, that the other insurance excess clause must be enforced, and that the excess carrier has no duty to pay defense costs. *See Lansing Community College v. Continental Cas. Co.,* 869 F.Supp. 524, 527–28 (W.D.Mich.1994); *City of Old Town v. American Employers Ins. Co.,* 858 F.Supp. 264, 270–71 (D.Me.1994); *Board of Trustees of Michigan State University v. Continental Cas. Co.,* 730 F.Supp. 1408, 1412–13 (W.D.Mich.1990); *Aetna Cas. & Sur. Co. v. Continental Cas. Co.,* 413 Mass. 730, 604 N.E.2d 30, 31–32 (1992); *Widener University v. Fred S. James & Co., Inc.,* 371 Pa.Super. 79, 537 A.2d 829, 830–32 (1988); *Firemen's Ins. Co. of Washington, D.C. v. Federal Ins. Co.,* 233 A.D.2d 193, 649 N.Y.S.2d 700, 700–01 (1st Dept.1996).

Farmington does not distinguish these cases effectively. Instead, it tries to get around the holding of these cases based on cases from New York and other jurisdictions that have disregarded the excess other insurance clause in certain circumstances and required the excess insurer to contribute to defense costs. Farmington relies at the outset on language from a seminal California case, *Signal Companies v. Harbor Ins. Co.,* 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980). In that case, the California Supreme Court held, in accordance with the general rule, that an insurer who was designated as excess could not be required to participate in defense costs. *See id.* at 804–805, 612 P.2d 889. However, it went on to hold that it would not "formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which affect the insured and the pri-

mary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers." *Id.* at 805, 612 P.2d 889. Further, it held that the respective rights and duties of insurers who have covered the same event do not arise out of contracts, for their agreements are not with each other, but from "equitable principles designed to accomplish ultimate justice in the bearing of a specific burden." *Id.* This equitable theory is the basis for Farmington's claim.

I find that Farmington's equitable contribution argument must be rejected. First, Farmington has cited no case from the State of Colorado on this issue, and Colorado recognizes and enforces "other insurance" clauses. *See Colonial Ins. Co. of California,* 969 P.2d at 800; *Finizio,* 967 P.2d at 191–92. Second, although Farmington has cited a case from this Court, *Millers' Mut. Ins. Ass'n of Illinois v. Iowa Nat'l Mut. Ins. Co.,* 618 F.Supp. 301 (D.Colo.1985), as well as cases from other jurisdictions, all of these cases are distinguishable and/or not controlling under the applicable law of Colorado.

*Millers' Mut. Ins. Ass'n of Illinois* held that an excess insurer could be required to contribute to defense costs where the duty to defend had been triggered because the primary insurer's policy limits were exhausted by way of interpleader. *Id.,* 618 F.Supp. at 304. Further, the judgments were sure to be in excess of the policy limits of the primary insurer. *Id.* at 306. That is not the case here.

*Belmer v. Nationwide Ins. Co.,* 157 Misc.2d 845, 599 N.Y.S.2d 427 (N.Y.Sup. Ct.1993) is similar. There, it was clear from the early stages of the litigation that contribution by the excess carrier would be required in judgment or settlement, thus, the court required the excess carrier to contribute to the defense. *Id.* at 431–32. *See also Guaranty Nat'l Ins. Co. v. American Motorists Ins. Co.,* 758 F.Supp. 1394, 1397–98 (D.Mont.1991) (equity compelled proration of defense costs among several

insurers based on amounts contributed to ultimate settlement), *aff'd,* 981 F.2d 1108 (9th Cir.1992); *Schulman Investment Co. v. Olin Corp.,* 514 F.Supp. 572 (S.D.N.Y. 1981) (recognizing that "[t]here may come a point at which the potential liability of the insured is so great that the excess carrier is required to participate in the defense despite any contractual provision disclaiming coverage of expenses covered by other policies"). Again, this case is factually distinct from the above cases relied on by Farmington since it has not been contended that the judgment will exceed the limits of the primary insurance.

*NL Industries, Inc. v. Commercial Union Ins. Co.,* 935 F.Supp. 513 (D.N.J.1996), another key case cited by Farmington which relied on New York law, is also distinguishable. There, the court enforced an excess clause during the periods of time that there was overlapping coverage. *Id.* at 517–18. This supports UE's argument. However, the court did not enforce the excess clause during a certain period of loss because the excess clause only applied "with respect to loss or claims covered hereby." *Id.* at 518. Because the primary insurer did not have coverage with respect to any loss or claims covered by the excess carrier's policy during that period, the carrier was required to contribute for losses incurred during that time frame. *Id.* at 518–519. That is different than this case since Farmington's policy covered the same "loss" as UE's policy during the relevant period.

Importantly, the cases cited by Plaintiff fail to address the factual scenario presented here; i.e., a CGL carrier whose policy is primary versus an ELL carrier whose policy is excess when there is other insurance and where the excess carrier has no duty to defend at the outset. I find that the cases cited above by UE finding that an "other insurance" clause such as presented here must be enforced are more persuasive and control this issue. Accordingly, I GRANT Defendant's summary judgment motion and DENY Plaintiff's

summary judgment motion on an equitable contribution theory.

### 4. *Whether Farmington is Entitled to Defense Costs from UE Under a Subrogation Theory*

■ Farmington asserts as another basis for receiving defense costs from UE that the general rule entitles an insurer to recover from the insured those costs in "mixed action", *i.e.,* actions where there are both covered claims and noncovered claims, that were incurred in defending the noncovered claims. Here, instead of pursuing this claim directly against the University, Farmington has chosen to assert an equitable subrogation theory for these costs against the party who is responsible for payment of such costs ultimately, *i.e.,* UE, since UE insured all of the noncovered claims. Farmington relies heavily on another California decision, *Buss v. Superior Court of Los Angeles County,* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997). However, Farmington argues that this is the general rule throughout the country, *e.g., Insurance Co. of North America v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1224 (6th Cir.1980), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), and that this rule is generally recognized in both Colorado and New York, citing cases.

As stated above, I find that this issue is governed by the law of Colorado. Colorado law is not clear on whether it would allow an insurer to recover defense costs from the insured in a "mixed" action, where some claims are covered and some claims are not covered. The Colorado Supreme Court in *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo.1991) indicated that an insurer could provide a defense under a reservation of rights and, if the facts at trial showed that the incident resulting in liability was not covered by the policy, could obtain reimbursement from the insured. It did not address, however, whether an insurer could seek reimbursement in a "mixed"

case, where some of the claims are covered and some are not. UE argues that allowing reimbursement in such situations would defeat the general rule that an insurer must provide a defense in the entire action, even when only some claims are implicated by coverage, since the insurer agrees to defend the entire "suit", and the insured has given consideration for this by relinquishing the entire defense to the insurer.

This Court has addressed the issue in a couple of cases. However, those cases are distinguishable and are also not controlling as to what the Colorado Supreme Court would hold on this issue. Judge Kane in *Fight Against Coercive Tactics Network, Inc. v. Coregis Ins. Co.,* 926 F.Supp. 1426, 1435–36 (D.Colo.1996) appointed a special master to keep track of which legal expenses were incurred on covered versus noncovered claims. However, that case is distinguishable because it dealt with a situation where an insurer had no duty to defend but had a duty to reimburse for covered losses, a policy like UE's. It did not address a "mixed" claim in the context of an insurer who had a duty to defend the entire case, as Farmington does here. Finally, Judge Babcock in *Flannery v. Allstate Ins. Co.,* 49 F.Supp.2d 1223 (D.Colo. 1999), indicated without discussion that this type of reimbursement in a "mixed" claim might be available. However, he further indicated that this reimbursement was premised on the insurer having policy language that allowed for such a result. *Id.* at 1232.

I am not persuaded that the appellate courts of Colorado would adopt the rule allowing allocation of expenses in a "mixed" case between the insurer and the insured, at least without some type of policy language that supports same. Here, as with the standard CGL policy, Farmington is required to defend the "suit", not a "claim or covered claim."

However, even if I assume that Colorado law would allow an insurer to recover from an insured those costs spent on defense of

noncovered claims, I have several problems with Farmington's theory of recovery against UE. First and foremost, there are no cited cases where this theory has been extended to allow an insurer to recover these costs from a third party insurer, as compared to the insured. Further, subrogation generally requires that the insurer stand in the shoes of the insured, possessing only the rights and remedies possessed by the insured. *See Mohl v. NTC of America, Inc.,* 564 F.Supp. 401, 403 (D.Colo.1982). Under this theory, Farmington, through the University, would not have a claim against UE. This is because the University, as the insured, is not entitled to a defense by UE under the policy, only a duty to reimburse defense costs if there is no other insurance. Since Farmington has insurance that covers the first lawsuit, the University could not recover against UE. Thus, subrogation does not apply.

The same result is mandated, in my opinion, by the fact that to recover such costs, the insurer is required to have specifically advised the insured in its reservation of rights or in its policy that it intended to recover such costs against it. *See Flannery,* 49 F.Supp.2d at 1232; *Buss,* 65 Cal.Rptr.2d at 384 n. 27, 939 P.2d 766. Here, Farmington's reservation of rights did not give the University such notice nor did its policy give it a right to seek such reimbursement.

I recognize that there is also an "equitable" theory of subrogation, independent of the conventional theory of subrogation described above. *See Insurance Co. of North America v. Medical Protective Co.,* 768 F.2d 315, 320 (10th Cir.1985). Under that type of subrogation, "a person who has been compelled to pay a remedy" may recover "against one who, in justice, ought to pay." *Id.* Here, however, I find that Farmington has not shown that UE, in justice, ought to pay the defense costs of the first lawsuit. As stated above, there are no cited cases where this type of equitable subrogation theory has been allowed under the facts of this case. Further, I think that justice in this case would require the opposite result. Both UE and Farmington issued their policies to the insured that listed their respective obligations. UE's policy specifically stated that it had no duty to defend at the outset, and no duty to reimburse costs if there was other insurance that applied. If such other insurance applied, UE's policy would be excess. On the other hand, Farmington agreed that it would defend the entire "suit" if claims were asserted that were covered by the policy, and agreed that its duty to defend would continue even if there was other insurance—at that point, it would defend on a pro rata basis. This was bargained for by the parties, and I see no just reason why Farmington should be allowed to circumvent the clear language of both policies in this case.

Accordingly, I hereby GRANT Defendant's summary judgment motion and DENY Plaintiff's summary judgment motion on the subrogation theory.

5. *Whether UE is Required to Defend the Portion of the Lawsuit that Relates to the Claims in the Second Lawsuit*

■ Finally, I turn to whether UE is required, under the terms of the 1993–1994 policy, to pay the defense costs incurred in the second action. It is undisputed that if the second lawsuit had not been consolidated into the first lawsuit, UE would be required to reimburse the University for defense costs, because that lawsuit does not assert any claims that are potentially covered by Farmington's policy. UE would not have a duty to defend under its policy, only a duty to reimburse the University. However, both lawsuits were consolidated for all purposes, and Magistrate Judge Schlatter indicated that he thought the claims in the second lawsuit should have been brought in the first lawsuit, *i.e.,* that Plaintiff should simply have amended her complaint to assert these new claims. Further, there is some evi-

dence that Dr. Deitz may have brought the second lawsuit in state court only to avoid some unfavorable rulings in the federal court on her claims.

Thus, the issue becomes whether the consolidation of the two cases means that Farmington must now defend both suits, even though its policy does not, by its terms, cover any of the claims contained in the second lawsuit. Obviously, if I find that the consolidation has the effect of making the cases indistinguishable for purposes of the claims, Farmington may be obligated to continue to defend the entire action, including the claims raised by the second lawsuit. However, this result is in conflict with the terms of UE's policy as applied to the facts.

I find that the consolidation of the two lawsuits does not relieve UE of its duty to defend when I take into account the unambiguous provisions of UE's policy. Regardless of the consolidation, the fact remains that an actual second lawsuit was filed by Farmington which implicates UE's coverage only, not Farmington's coverage. The consolidation of the case was due to the University's removal of the case to this Court followed by a motion to consolidate the cases that was granted by the magistrate judge. Further, the removal of the state action to federal court and the filing of the consolidation motion were approved by UE. I cannot permit UE to circumvent its clear duty under the policy it issued to the University to reimburse losses, including defense costs, by the fortuitous event that its insured chose, with UE's approval, to remove the second case to federal court and had its consolidation motion granted.

This is compelled by the language of UE's "other insurance" clause. As stated earlier, that clause states, "if other valid and collectable insurance with any other insurer ... is available to the Insureds covering a Loss covered by this Policy, other than insurance which is expressly and specifically in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with

such other insurance." *See* Ex. 14, p. 14. The clause requires that for UE's insurance to be excess, other insurance must cover a "Loss covered by this Policy." Farmington's policy does not, however, cover any "Loss covered by this Policy" in connection with the second lawsuit. The consolidation of the two lawsuits does not change that end result. Accordingly, I find that Plaintiff's summary judgment motion must be GRANTED and Defendant's summary judgment be DENIED on this issue of the payment of defense costs that emanate from the filing of the second lawsuit. I leave to the second stage of the litigation the resolution of how the defense costs are to be paid by UE for the second lawsuit. I have established a briefing schedule on this issue.

## III. CONCLUSION

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART consistent with this Order. It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART consistent with this Order. Finally, it is

ORDERED that the parties are to file opening briefs on the second phase of this litigation, relevant to the resolution of how defense costs are to be paid by UE in connection with the second lawsuit, by January 31, 2000. Responses are to be filed by February 29, 2000. The parties may, if they wish, file replies by March 15, 2000. A hearing is set on the second phase of this litigation for June 9, 2000 at 9:00 a.m. in Courtroom C–200.